UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| RODNEY WHEELER, | No. |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | DEMAND FOR JURY |
| ELEANOR BROGGI, MATTHEW OLMSTEAD; and KING COUNTY, | |
| Defendants. | |

## I.    NATURE OF THE CASE

1.1    This is a civil rights action brought under 42 U.S.C. § 1983 and state law for damages arising from the wrongful investigation, arrest, and prosecution of Plaintiff Rodney Wheeler.  Defendant King County Sheriff's Detectives Eleanor Broggi and Matthew Olmstead caused Mr. Wheeler to be arrested and charged without probable cause for a murder he did not commit and had no involvement with whatsoever.  In Detective Olmstead's affidavits for warrants to search Mr. Wheeler's cell phone records and home, and in Detective Broggi's certification for probable cause to support the criminal charges, the detectives made false statements and omitted important facts that would have undermined their allegations against Mr. Wheeler.  Throughout the investigation and prosecution, Detective Broggi ignored evidence that did not align with her theory of the case and withheld numerous pieces of exculpatory evidence, leading to delays in Mr. Wheeler's trial.  As a result, Mr. Wheeler spent more than two years behind bars in pretrial detention before a jury acquitted him in March of 2019.  In that

COMPLAINT FOR DAMAGES - 1

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

time, he suffered severe and long-lasting damage to his emotional wellbeing, his reputation, and his relationships with his family, endured the invasion of his privacy through unreasonable searches of his home and effects, and incurred attorney's fees to defend against the false charges.

## II.   PARTIES

2.1   Plaintiff Rodney Wheeler is a resident of Pierce County, Washington.

2.2   Defendant Eleanor Broggi was at all times relevant to this action a King County Sheriff's Detective, acting within the scope of her employment as an agent of King County and under color of state law.

2.3   Defendant Matthew Olmstead was at all times relevant to this action a King County Sheriff's Detective, acting within the scope of his employment as an agent of King County and under color of state law.

2.4   Defendant King County is a municipal corporation organized under the laws of the State of Washington.  The King County Sheriff's Department is an agency of King County.

## III.   JURISDICTION AND VENUE

3.1   This Court has original jurisdiction over plaintiff's claims brought under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331 and § 1343.  This Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

3.2   Venue is proper in the Western District of Washington at Seattle under 28 U.S.C. § 1391(b).  A substantial part of the events or omissions giving rise to these claims occurred in King County, and at least one of the defendants resides in this district.

3.3   Plaintiff filed a tort claim with King County on June 5, 2019 in compliance with RCW 4.92.100.  No action has been taken on the claim in over sixty days.

## IV.   FACTUAL ALLEGATIONS

### The Shooting

4.1   On August 31, 2016, a white man named Justin Love was shot and killed following an argument outside the Motel 6 located at 18900 47th Avenue South in Sea-Tac,

COMPLAINT FOR DAMAGES - 2

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

Washington.  A stray bullet from the shooting also hit and wounded another guest who was inside the hotel.

4.2     The shooting occurred at about 9:55 PM.

4.3     The suspected shooter and Mr. Love were on opposite sides of a fence that divides the Motel 6 parking lot from South 189th Street; at the time he was shot, Love was climbing the fence from inside the parking lot and the shooter was on the other side.

4.4     There were three eyewitnesses in close proximity to the suspected shooter who gave detailed statements to the police:  Michael Meyer and William Newell (two of Love's friends who were also involved in the argument), and Brian Falgout, an uninvolved witness parked nearby.

4.5     These three witnesses described the suspected shooter as a young black man, appearing to be in his early twenties, shorter and with a slight build, wearing dark or all-black clothing, and leaving the scene in a dark-colored sedan.

4.6     Mr. Meyer, who was climbing the fence next to Love when Love was shot, told one of the first officers to respond to the scene that the shooter was a black male "wearing dark clothing," who "had dreadlocks," and was "shorter and slender in build with twisted dreadlock-like hair."

4.7     In a recorded statement taken less than two hours after the shooting, Meyer described the suspected shooter as a "black male"; "approximately five . . . seven to five nine"; "[a]bout a hundred and forty to a hundred and sixty pounds"; "wearin' like a long sleeve button up shirt"; with "shaggy dreaded hair down to about his ears."

4.8     Mr. Newell, who was also near Love at the fence, described the suspected shooter in a recorded statement taken just a few hours after the shooting as: "around five eight to six foot.  I wanna say hundred and thirty to hundred and fifty pounds.  Black male he had black pants on, black shirt, a black over-shirt, a brown backpack, a black hat on…uh his complexion was very dark, you couldn't see any type of facial expressions or anything from him."

COMPLAINT FOR DAMAGES - 3

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

4.9     Newell further described the suspected shooter as "mid, early to mid-twenties," and said that he left the scene in "some type of sports car" or "sedan" that was "dark" with "a rounded front-end like a Ford Probe and rounded lights like the old Ford Probe."

4.10    Newell also said that he had seen the suspect go over the fence to the Motel 6 more than a dozen times in the past two weeks Newell had stayed there.

4.11    Less than an hour after the shooting, at 10:33 PM, Mr. Falgout called 911 and reported the following: "I saw the whole thing . . . And I-I seen somebody matches the description . . . I literally think I see him right across the street . . . He-he's up at-there's a blue-there's like a blue apartment complex and he's up-he's upstairs and he matches the description. I don't know for sure if it's him, but he was-the dude that did it was wearin' a black hoodie, and this dude's across the street wearin' a black hoodie watchin'. . . [He] matched the dude that I saw do it. . . . [T]he dude that did it took off in a little black car. I don't know if there's a little black car over there, but I swear like the dude that did it was wearin' all black and a black hoodie and he was over there wearin' all black and a black hoodie."

4.12    In a written statement taken by the police at 11:30 PM, Falgout repeated that the shooter was wearing "all dark clothes" and drove away in "a small black car."

4.13    In a follow-up interview on September 16, 2016, Falgout again stated that the suspected shooter was wearing "all black" and drove away in a "small black car" or "small black Honda."

4.14    Only one of these witnesses—William Newell—described the shooter as wearing a brown backpack.

4.15    Plaintiff Rodney Wheeler, a black man, did not match these descriptions. He was 39 years old, six feet tall, and 200 pounds. On the night of the shooting, he was seen on surveillance video passing near the scene of the shooting several minutes before the altercation began. He was not wearing dark or all-black clothing—he was wearing blue jeans, a gray hoodie with bright white strings and zipper, and a black hat with a large, bright white Carolina Panthers logo. He did not have dreadlocks. He did not drive or own any black cars.

COMPLAINT FOR DAMAGES - 4

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

4.16    The surveillance video shows Mr. Wheeler calmly exiting the motel and drinking from a water bottle as he walks towards the fence at the edge of the property, without interacting with anyone.  He is gone before the altercation that leads to the shooting begins a few minutes later, when two white men (Newell and Love) are seen to angrily come out of their motel room to confront the unseen man with whom they were arguing.

4.17    The area behind the fence was well-known for drug use and sales and it was not uncommon for persons to loiter in the area and meet occupants of the Motel 6.

4.18    A man who can be seen on surveillance video exiting the hotel immediately behind Mr. Wheeler later told police that he too had seen the suspected shooter and described him as wearing "dark clothes."  The man did not identify Mr. Wheeler or provide a description that matched Mr. Wheeler despite having seen both Mr. Wheeler and the shooter within about five minutes.

### The Investigation

4.19    Investigation of the Motel 6 homicide was assigned to two King County Sheriff's Detectives:  Defendants Eleanor Broggi and Matthew Olmstead.  Detective Broggi was the lead investigator.

4.20    On September 6 and 7, 2016, Broggi sent witness Newell six emails, each with one photo of a black man taken from the Motel 6 surveillance video in the week leading up to the shooting.

4.21    The photos were both of poor quality and highly suggestive; all three photos sent on September 7 were of Mr. Wheeler, and they displayed a date and timestamp showing him in the motel shortly before the murder.

4.22    Mr. Wheeler was the only man shown with a backpack, and Broggi sent the photos only to Newell—the only witness who claimed to have seen a brown backpack.  Broggi did not show the photos to any other eyewitnesses.

4.23    On September 7, Newell told Broggi that of the photos she sent, he thought it was "the one with the backpack," but that he would have to see a better photo to be sure.

COMPLAINT FOR DAMAGES - 5

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

4.24    Broggi later admitted in sworn testimony that this was not a sufficient eyewitness identification.

4.25    But from that point forward, in a textbook case of tunnel vision, Broggi focused solely on Wheeler to the exclusion of other suspects, and misrepresented, concealed, and omitted facts that did not fit her bias.

4.26    In an email written on September 9, Broggi wrote that Wheeler was "our shooter but no pc yet," while acknowledging that she still needed "to do a montage."

4.27    On September 15, Broggi traveled to Portland, Oregon to meet with Newell and Meyer and conduct a photo montage with each of them separately.  The montage contained a better quality photo of Mr. Wheeler and did not show him wearing a backpack.

4.28    That same morning, before conducting the photo lineup, Broggi sent a copy of Wheeler's photo to the prosecutor with the message: "This is going to be our shooter."

4.29    But later that day, when shown the better quality photo, neither Newell nor Meyer picked Wheeler from the montage.  Newell said that none of the photos was the shooter; Meyer identified two other members of the lineup as possible suspects, but not Wheeler.

4.30    After the unsuccessful montage, rather than pulling back the scope of the investigation to consider other suspects, Detectives Broggi and Olmstead continued to pursue Mr. Wheeler through nondisclosure of exculpatory evidence and the use of false and misleading information.

4.31    In later sworn testimony, Detective Broggi admitted that after September 15, 2016, she did not gain any evidence suggesting that Rodney Wheeler was the shooter.

**The First Search Warrants**

4.32    The day after the photo lineup, September 16, Detective Olmstead obtained three warrants for Mr. Wheeler's cell phone records using the same warrant affidavit.

4.33    The warrant affidavit, which Olmstead signed under penalty of perjury, contained numerous false and misleading statements of material fact and omitted other material facts.

COMPLAINT FOR DAMAGES - 6

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

These false and misleading statements and material omissions were made knowingly and with reckless disregard for the truth and for Mr. Wheeler's constitutional rights.

4.34    Before submitting the affidavits to the judge, Detective Olmstead sent drafts to Detective Broggi, but she did not correct any of the false or misleading statements or material omissions.

4.35    In the warrant affidavit, Detective Olmstead stated that "Newell advised that he had seen the same black male roughly 20 times during the preceding weeks that he had been staying at the motel." This statement was misleading because it omitted the material fact that the surveillance video had shown Wheeler at the motel on only two prior occasions, making it less likely that Wheeler was the man Newell had seen.

4.36    In the warrant affidavit, Detective Olmstead stated that "Police received reports from witnesses that the suspect then fled the area, possibly in a vehicle." This statement was misleading because it omitted the material facts that (1) witnesses had described a specific vehicle, a small, dark or black sedan; and (2) Rodney Wheeler was not associated with any such vehicle.

4.37    In the warrant affidavit, Detective Olmstead stated that the surveillance video of Mr. Wheeler "matched the description provided by Newell." This was a false statement of material fact; Mr. Wheeler did not match Newell's description of the shooter's height, weight, age, complexion, clothing, or vehicle.

4.38    The statement described in paragraph 4.37 was also misleading because it omitted the material facts that eyewitnesses Meyer and Falgout had also given detailed descriptions of the shooter, and the surveillance video of Mr. Wheeler did not match those descriptions either.

4.39    In the warrant affidavit, Detective Olmstead stated that "[s]till photographs of the video depicting the possible suspect were shown to Meyer and Newell separately. Both agreed that the still photographs appeared to be the same person who shot Love." This was a false statement of material fact; only Newell was shown the photographs, and Newell said only that he thought it was the photo "with the backpack" and that he needed to see a better photo.

COMPLAINT FOR DAMAGES - 7

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

4.40    The statements described in paragraph 4.39 were also false and misleading because they omitted the material facts that Meyer and Newell *had* been shown a photo lineup separately, and *neither* man identified Mr. Wheeler.

4.41    In the warrant affidavit, Detective Olmstead stated that Daniela Cuadra and Abelina Kidane, the people whom Mr. Wheeler had been visiting at the motel, told police that about 20 minutes after the shooting, "Wheeler called to inquire how [Cuadra] was doing and asked numerous questions about the happenings at the Motel 6.  Cuadra thought it strange . . . Wheeler continued to call Cuadra, encouraging her to leave the motel and asked a lot of further questions regarding police activity."  This statement was misleading because it omitted the material facts that (1) Detective Olmstead and/or Broggi had examined Cuadra's phone and found no records of the supposed calls from Wheeler; and (2) neither woman was a reliable witness, both were criminal suspects with warrants or charges pending against them, and both were rewarded by the detectives for their false incriminating statements.

4.42    But for the false and misleading statements of material fact and material omissions described in paragraphs 4.35 to 4.41, the judge would not have issued the search warrants for Mr. Wheeler's cell phone records.

4.43    But for the search and seizure of Mr. Wheeler's cell phone records, Mr. Wheeler would not have been charged with murder and held in pre-trial detention for more than two years.

4.44    Detectives Olmstead and Broggi received the relevant phone records on October 2, 2016, and they were analyzed by Detective Mike Mellis, who is trained in cell phone data collection.

4.45    The cell phone records showed that Mr. Wheeler was in the proximity of the Motel 6 just prior to the shooting, a fact already known through the surveillance video.

4.46    But the cell phone records also showed that:  (1) Mr. Wheeler received an incoming call at 9:54:49 PM and placed an outgoing call at 9:55:20 PM, right around the time of the shooting; (2) the cell tower data from those calls was consistent with Mr. Wheeler having

COMPLAINT FOR DAMAGES - 8

**MacDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

already left the property at the time of the shooting; (3) the cell tower data showed that Mr. Wheeler was in Renton at the time witness Falgout called 911 and reported seeing the shooting suspect at an apartment complex across the street; (4) Mr. Wheeler had been out of the state during part of the time in which Newell reported seeing the suspect come and go from the Motel 6; and (5) there was no record of Mr. Wheeler calling Daniela Cuadra the night of the shooting.  All of these things were inconsistent with Broggi and Olmstead's theory that Wheeler was the shooter.

## The Second Search Warrants

4.47   On October 5, 2016, Detective Olmstead obtained a warrant to search Wheeler's home and person and seize numerous categories of items.

4.48   This warrant affidavit, which Olmstead signed under penalty of perjury, contained the same numerous false statements of material fact and material omissions as the affidavit for the cell phone warrants, in addition to new material false statements and omissions.  These false statements and material omissions were made knowingly and with reckless disregard for the truth and for Mr. Wheeler's constitutional rights.

4.49   In the warrant affidavit, Detective Olmstead stated that "Newell advised that he had seen the same black male roughly 20 times during the preceding weeks that he had been staying at the motel."  This statement was misleading because it omitted the material facts that (1) the surveillance video had shown Mr. Wheeler at the motel on only two prior occasions; and (2) Mr. Wheeler's cell phone records had demonstrated that he was out of the state during part of the time Newell reported seeing the suspect at the motel.

4.50   In the warrant affidavit, Detective Olmstead stated that "Police received reports from witnesses that the suspect then fled the area, possibly in a vehicle."  This statement was misleading because it omitted the material facts that (1) witnesses had described a specific vehicle, a small, dark or black sedan; and (2) Rodney Wheeler was not associated with any such vehicle.

COMPLAINT FOR DAMAGES - 9

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

4.51   In the warrant affidavit, Detective Olmstead stated that the surveillance video of Mr. Wheeler "matched the description provided by Newell." This was a false statement of material fact; Mr. Wheeler did not match Newell's description of the shooter's height, weight, age, complexion, clothing, or vehicle.

4.52   The statement described in paragraph 4.51 was also misleading because it omitted the material facts that eyewitnesses Meyer and Falgout had also given detailed descriptions of the shooter, and the surveillance video of Mr. Wheeler did not match those descriptions either.

4.53   In the warrant affidavit, Detective Olmstead stated that "[s]till photographs of the video depicting the possible suspect were shown to Meyer and Newell separately. Both agreed that the still photographs appeared to be the same person who shot Love." This was a false statement of material fact; only Newell was shown the photographs, and Newell said only that he thought it was the photo "with the backpack" and that he needed to see a better photo.

4.54   The statements described in paragraph 4.53 were also false and misleading because they omitted the material facts that Meyer and Newell *had* been shown a photo lineup separately, and *neither* man identified Mr. Wheeler.

4.55   In the warrant affidavit, Detective Olmstead stated that Daniela Cuadra and Abelina Kidane, the people whom Mr. Wheeler had been visiting at the motel, told police that about 20 minutes after the shooting, "Wheeler called to inquire how she was doing and asked numerous questions about the happenings at the Motel 6. Cuadra thought it strange . . . Wheeler continued to call Cuadra, encouraging her to leave the motel and asked a lot of further questions regarding police activity." This statement was false or misleading because Detective Olmstead knew that: (1) Detective Olmstead and/or Broggi had examined Cuadra's phone and could find no records of the supposed calls from Wheeler; (2) neither woman was a reliable witness, both were criminal suspects with warrants or charges pending against them, and both were rewarded by the detectives for their false incriminating statements; and (3) Wheeler's cell phone records did not show any of the supposed calls to Cuadra.

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

4.56    In the warrant affidavit, Detective Olmstead stated that Mr. Wheeler's phone records "revealed multiple instances of phone activity by [his] number utilizing cellular towers in close proximity to the Motel 6, just prior to the murder." This statement was false or misleading because the cell phone records also showed that: (1) Mr. Wheeler received an incoming call at 9:54:49 PM and placed an outgoing call at 9:55:20 PM, right around the time of the shooting; (2) the cell tower data from those calls was consistent with Mr. Wheeler having already left the property at the time of the shooting; (3) the cell tower data showed that Mr. Wheeler was in Renton at the time witness Falgout called 911 and reported seeing the shooting suspect at an apartment complex across the street; and (4) Mr. Wheeler had been out of the state during part of the time in which Newell reported seeing the suspect come and go from the Motel 6.

4.57    In the warrant affidavit, Detective Olmstead stated that "[a]t the scene of the homicide on 8/31/2016, witness Newell and others described a brown leather backpack." This was a false statement of material fact; despite three eyewitnesses in close proximity to the shooting, Newell was the only one who described a brown leather backpack.

4.58    But for the false and misleading statements of material fact and material omissions described in paragraphs 4.49 to 4.57, the judge would not have issued the search warrants for Mr. Wheeler's home and person.

4.59    The unreasonable search of Mr. Wheeler's home and person and the unreasonable seizure of his personal effects caused damage to Mr. Wheeler's reputation and emotional wellbeing.

4.60    The search of Mr. Wheeler's home and person did not uncover any evidence tying him to the shooting at the Motel 6.

**The Probable Cause Certification and Withholding of Exculpatory Evidence**

4.61    Also on October 5, 2016, the State of Washington charged Mr. Wheeler with one count of second degree murder, one count of assault in the second degree, and one count of unlawful possession of a firearm in the second degree, all arising from the shooting at the Motel 6 on August 31, 2016.

COMPLAINT FOR DAMAGES - 11

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

4.62   The charging documents were based on a "Certification for Determination of Probable Cause" prepared and signed under penalty of perjury by Detective Broggi. This probable cause certification was also the basis for a warrant issued by the court for Mr. Wheeler's arrest.

4.63   Detective Broggi's probable cause certification contained numerous false and misleading statements of material fact and material omissions. The false and misleading statements and material omissions were made knowingly and with reckless disregard for the truth and for Mr. Wheeler's constitutional rights.

4.64   In the probable cause certification, Broggi wrote that eyewitness Meyer reported the argument began "when a black male subject, whom he believed was shorter, but slender with dreadlocks threw a rock at their window. This subject had done the same thing to them while they were at the motel the week prior." This statement was false or misleading because Detective Broggi knew that: (1) Meyer specifically described the shooter as approximately 5'7" to 5'9" tall, 140 to 160 pounds, wearing dark clothing, including a long sleeve button up shirt, and had "shaggy dreaded hair down to about his ears"; (2) the surveillance video showed that Wheeler did not fit that description; (3) the surveillance video showed Wheeler moving through the parking lot, without throwing a rock or paying any attention to the hotel windows; (4) no rock or other object was found consistent with Meyer's report of a rock being thrown at the window; and (5) despite being seen on surveillance video coming and going from the hotel on two prior occasions, Wheeler is not seen throwing a rock on those occasions either.

4.65   In the probable cause certification, Broggi wrote that eyewitness Newell said "a black male, about 6-0 with a skinny build, had been throwing rocks at the room [Newell] was sharing with his coworkers while yelling, 'crackers.' Newell further described this male as wearing dark clothing, a baseball cap, and a brown suede backpack." This statement was false or misleading because Detective Broggi knew that: (1) Newell specifically described the shooter as in his early to mid-twenties, between 5'8" to 6'0, 130 to 150 pounds, wearing black pants, a black shirt, a black over-shirt, a brown backpack, and a black hat, with a very dark complexion;

COMPLAINT FOR DAMAGES - 12

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

(2) the surveillance video showed that Wheeler did not fit that description; (3) the surveillance video showed Wheeler moving through the parking lot, without throwing a rock or paying any attention to the hotel windows; and (4) no rock or other object was found consistent with Newell's report of a rock being thrown at the window.

4.66    In the probable cause certification, Broggi wrote that eyewitness Newell said "he has seen this subject at the motel numerous times" and that Wheeler "is depicted on Motel 6 video on several dates, including the date of the murder."  This statement was misleading because Detective Broggi knew that:  (1) Newell claimed to have seen the shooter come and go from the hotel dozens of times over the past two weeks; (2) Wheeler was seen on video at the hotel only twice; (3) Newell claimed that the shooter previously threw a rock at his window; (3) the video of Wheeler shows him coming and going without ever throwing a rock; and (4) Wheeler's phone records showed that he was out of the state for part of the time Newell claimed to have seen the shooter at the motel.

4.67    In the probable cause certification, Broggi wrote that when shown still photos from the surveillance video, "Newell identified a male with a tan backpack, grey sweat suit and a baseball hat as the man who shot Love."

4.68    This statement was false; Detective Broggi knew that all Newell said was that of the photos she sent to him—only one of which depicted a person with a backpack—Newell thought it was "the one with the backpack" and that he would need to see a better picture to be sure.  Newell also said that the backpack had stood out for him because it "didn't match" the clothing the shooter was wearing and reminded him of a "Ninja turtle."  These statements were consistent with Newell's previous description of the shooter as wearing all-black clothing; a description that did not match Rodney Wheeler.

4.69    Broggi memorialized Newell's description in a contemporaneous email she wrote on September 7, 2016.  This email was material and exculpatory.

4.70    Broggi withheld that email from Wheeler's criminal defense attorneys until more than two years later, after his trial had already started, despite the court having ordered her

COMPLAINT FOR DAMAGES - 13

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

specifically to turn over all communications related to Newell's supposed identification of Mr. Wheeler. Broggi withheld the exculpatory material intentionally and with deliberate indifference to and reckless disregard for Mr. Wheeler's constitutional rights.

4.71    During that same time period, Broggi made additional intentionally or recklessly false statements about Newell's response to the surveillance photograph, claiming that Newell had "described in detail the clothing . . . the suspect had been wearing" and "identified a male with a tan backpack, grey sweat suit and baseball hat."

4.72    In the probable cause certification, Broggi also wrote that Daniela Cuadra and Abelina Kidane, the people whom Mr. Wheeler had been visiting at the motel, told police that shortly after the shooting, Wheeler "kept calling" Cuadra, "checking on her welfare and encouraging her to leave the hotel." This statement was false or misleading, because Detective Broggi knew that: (1) Detective Olmstead and/or Broggi had examined Cuadra's phone and found no records of the supposed calls from Wheeler; (2) Wheeler's cell phone records did not show any of the supposed calls to Cuadra; and (3) neither woman was a reliable witness, both were criminal suspects with warrants or charges pending against them, and both were rewarded by the detectives for their false incriminating statements.

4.73    In the probable cause certification, Broggi also wrote that the warrant for Wheeler's cell phone records "showed that the phone was used before the time of homicide in the area of this incident as indicated by cell phone tower records." This statement was misleading because Detective Broggi knew that the cell phone records also showed that: (1) Mr. Wheeler received an incoming call at 9:54:49 PM and placed an outgoing call at 9:55:20 PM, right around the time of the shooting; (2) the cell tower data from those calls was consistent with Mr. Wheeler having already left the property at the time of the shooting; (3) the cell tower data showed that Mr. Wheeler was in Renton at the time witness Falgout called 911 and reported seeing the shooting suspect at an apartment complex across the street; and (4) Mr. Wheeler had been out of the state during part of the time in which Newell reported seeing the suspect come and go from the Motel 6.

COMPLAINT FOR DAMAGES - 14

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

4.74    Detective Broggi instituted the prosecution of Mr. Wheeler through the false and misleading statements in her certificate of probable cause.

4.75    Detective Broggi did not have probable cause to believe Mr. Wheeler committed the crimes with which he was charged.

4.76    Detective Broggi did not provide the prosecuting attorney with a full and fair disclosure, in good faith, of all the material facts known to her.

4.77    Detective Broggi instituted the charges against Mr. Wheeler with malice, including animosity and vindictiveness toward Mr. Wheeler and reckless disregard for Mr. Wheeler's rights, as evidenced by her numerous false statements, withholding of exculpatory evidence, and statements that Mr. Wheeler was going to be "our shooter" without having probable cause.

4.78    Throughout the more than two years leading up to Mr. Wheeler's trial, Detectives Broggi and Olmstead withheld numerous other pieces of material exculpatory evidence, including but not limited to emails between Broggi and William Newell; text messages between Broggi and Daniela Cuadra; records related to Cuadra's phone; other records of the $200 payment made by Broggi and Olmstead to Cuadra; evidence of other favorable treatment given to Cuadra and Kidane by Broggi and Olmstead; and communications to Broggi and Olmstead regarding other potential suspects that were disregarded because of the focus on Mr. Wheeler. Broggi and Olmstead withheld this material intentionally and with deliberate indifference to and reckless disregard for Mr. Wheeler's constitutional rights. The delays in disclosure of this material, exculpatory evidence caused delays in Mr. Wheeler's trial and extended the length of his unlawful pre-trial detention.

### Mr. Wheeler's Injuries

4.79    The unlawful conduct of Detectives Broggi and Olmstead caused Mr. Wheeler severe harm. It caused him to be arrested at his home by a SWAT team, who pulled an armored vehicle into his yard, in plain view of his neighbors. He was taken from home while his children were at school and daycare, without a chance to say goodbye. Numerous news outlets published

COMPLAINT FOR DAMAGES - 15

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

stories reporting the murder charges against him; despite his later acquittal, these stories remain associated with his name on the internet today. His home and private possessions were searched and seized. It caused him to incur attorney's fees hiring private defense counsel until he ran out of money to pay and was assigned a public defender. And most importantly, it caused him to be wrongly incarcerated for more than two years, deprived of his freedom and missing that time with his partner and children.

## V.    CAUSES OF ACTION
### FIRST CAUSE OF ACTION
#### (Federal Civil Rights Violations Under 42 U.S.C. § 1983)

5.1    By virtue of the facts described above, Defendants Broggi and Olmstead are liable for compensatory and punitive damages for deprivation of Plaintiff Rodney Wheeler's civil rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, including the unreasonable search and seizure of his cell phone records and home, and his arrest and pre-trial detention without probable cause.

5.2    By virtue of the facts described above, Defendants Broggi and Olmstead are liable for compensatory and punitive damages for deprivation of Plaintiff Rodney Wheeler's civil rights guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983 to be free from deprivations of liberty without due process of law.

5.3    King County is liable for these constitutional violations by virtue of its condonation and ratification of them and similar conduct by its officers and agents. It also should be held liable under principles of *respondeat superior*. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 432, 117 S. Ct. 1382 137 L. Ed. 2d 626 (1997) (Breyer, et al., dissenting).

### SECOND CAUSE OF ACTION
#### (State Law Claim)

5.4    By virtue of the facts described above, Defendant King County is liable to Plaintiff Rodney Wheeler for the tort of malicious prosecution committed by its agents while acting within the scope of their employment.

COMPLAINT FOR DAMAGES - 16

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001

## VI.   JURY DEMAND

6.1   Plaintiff demands a trial by jury.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

7.1   Compensatory damages;

7.2   Punitive damages from the individual defendants on Mr. Wheeler's claims pursuant to 42 U.S.C. § 1983;

7.3   Costs, including reasonable attorney's fees, under 42 U.S.C. § 1988 and to the extent otherwise permitted by law;

7.4   The right to conform the pleadings to the evidence presented at trial;

7.5   Such other relief as may be just and equitable.

DATED this 3rd day of September, 2019.


MacDONALD HOAGUE & BAYLESS                 MacDONALD HOAGUE & BAYLESS


By s/Tiffany M. Cartwright                          By s/Timothy K. Ford
Tiffany M. Cartwright, WSBA # 43564         Timothy K. Ford, WSBA #5986
tiffanyc@mhb.com                                         timf@mhb.com

*Attorneys for Plaintiff*                                 *Attorneys for Plaintiff*


COMPLAINT FOR DAMAGES - 17

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

11864.00000 mh288001