1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

9   RODNEY WHEELER,

10                                    Plaintiff,        CASE NO. C19-1410-JCC-MAT

11        v.                                            REPORT AND RECOMMENDATION

12   ELEANOR BROGGI, et al.,

13                                    Defendants.

14

15                          <u>INTRODUCTION</u>

16        Justin Love was shot and killed outside a Motel 6 in SeaTac, Washington in August 2016.

17   A stray bullet from the shooting hit and wounded another guest at the motel.  In October 2016,

18   police arrested and charged plaintiff Rodney Wheeler with murder in the second degree, assault in

19   the second degree, and unlawful possession of a firearm in the second degree.  In March 2019, a

20   jury acquitted Wheeler of all crimes charged.

21        In a civil rights action brought under 42 U.S.C. § 1983 and state law, plaintiff alleges

22   malicious prosecution and violation of his Fourth and Fourteenth Amendment rights through

23   unreasonable search and seizure, arrest, and more than two years of pre-trial detention without

REPORT AND RECOMMENDATION
PAGE - 1

1  probable cause.  (Dkt. 8 (First Amended Complaint).)  He maintains King County Detectives

2  Eleanor Broggi and Matthew Olmstead, in affidavits for search warrants and in the certification

3  for probable cause, made false statements and omitted important facts that would have undermined

4  the allegations against him.  He contends Broggi ignored evidence not aligning with her theory of

5  the case and withheld exculpatory evidence.  He alleges King County condoned and ratified the

6  conduct of its officers and agents.

7       Defendants Broggi, Olmstead, and King County filed a Rule 12(b)(6) Motion to Dismiss.

8  (Dkt. 13.)  Plaintiff opposes the motion and consideration of some documents offered in support.

9  (Dkt. 18.)  The undersigned, having considered the briefing and evidence properly considered in

10  support, concludes the motion to dismiss should be DENIED.

11                                BACKGROUND

12       The shooting death of Justin Love outside a SeaTac Motel 6 occurred at approximately

13  9:55 p.m. on August 31, 2016.  Love and his friends/co-workers Michael Meyer and William

14  Newell had been staying at the motel while working in the area.  Just prior to the shooting, Love,

15  Meyer, and Newell had been arguing with the shooter while standing on opposite sides of a fence

16  dividing the motel parking lot from a street.  Love was shot while climbing the fence.  "The area

17  behind the fence was well-known for drug use and sales and it was not uncommon for persons to

18  loiter in the area and meet occupants of the Motel 6."  (Dkt. 8, ¶4.17.)

19       As set forth in the Amended Complaint (*see* Dkt. 8), Meyer, Newell, and Brian Falgout, an

20  uninvolved witness, described the shooter as a black male, appearing to be in his early twenties,

21  shorter and with a slight/slender build, wearing dark or all-black clothing, and leaving the scene in

22  a black or dark-colored car.  Meyer depicted the shooter as having dreadlocks or twisted/shaggy/

23  dreaded hair, Falgout described him as wearing "'all black and a black hoodie", while Newell,

REPORT AND RECOMMENDATION
PAGE - 2

alone among the witnesses, stated the shooter was wearing a brown backpack. (*Id.*, ¶¶4.6-4.7, 4.11, 4.14.) Falgout provided his description in a 911 call at 10:33 p.m. that night, stating he had seen "the whole thing" and thought he saw the suspect "watchin'" in an apartment complex across the street. (*Id.*, ¶ 4.11.) He provided a written statement at 11:30 p.m. and a later interview on September 16, 2016. (*Id.*, ¶¶4.12-.13.)

Detective Broggi obtained surveillance video footage from the motel and sent still photos taken from the footage and depicting black men to Newell, including three photos of Wheeler with a date and timestamp showing him in the motel shortly before the shooting. Wheeler was the only individual in the photos with a backpack. The photos also show Wheeler, who is "39 years old, six feet tall, [] 200 pounds", and does not have dreadlocks, wearing "blue jeans, a gray hoodie with bright white strings and a zipper, and a black hat with a large, bright white Carolina Panthers logo." (*Id.*, ¶4.15.) As memorialized in a September 7, 2016 email Broggi sent to a prosecutor, Newell thought the shooter was "'the one with the backpack,' but that he would have to see a better photo to be sure." (*Id.*, ¶¶ 4.23, 4.69.) Broggi did not show the surveillance photos to any other witness.

In another email, dated September 9, 2016, Broggi wrote that Wheeler was "'our shooter but no pc yet,'" and acknowledged she "still needed 'to do a montage.'" (*Id.*, ¶4.26.) On September 15, 2016, Broggi sent a copy of Wheeler's photo to the prosecutor with the message: "'This is going to be our shooter.'" (*Id.*, ¶4.28.) That same day, Broggi conducted the photo montage, separately, with Newell and Meyer. Neither Newell, nor Meyer selected Wheeler from the lineup. Newell said none of the individuals was the shooter, while Meyer identified two other members of the lineup as possible suspects.

On September 16, 2016, Olmstead obtained three warrants for plaintiff's cell phone records. (Dkt. 14, Exs. 11-12.) The warrant affidavit reflects Newell's report of hearing something

REPORT AND RECOMMENDATION
PAGE - 3

hit his motel room window screen prior to the argument and observing a black male outside the window. Newell had seen the same black male roughly twenty times in the preceding weeks, routinely wearing a distinct brown leather backpack and entering the motel parking lot by hopping over a chain link fence. The affidavit states surveillance footage matched the description provided by Newell, that still photographs from the footage were shown to both Meyer and Newell, and that "[b]oth agreed that the still photographs appeared to be the exact same person who shot Love." (*Id*., Ex. 11 at 3.) It does not mention Falgout, any descriptions of the shooter other than his race, or any descriptions of a vehicle. Nor does it mention the photo montage or that surveillance footage showed Wheeler at the motel on only two prior occasions in the two weeks before the shooting. (Dkt. 8, ¶¶ 4.35.)

The warrant affidavit also describes interviews Detectives Broggi and Olmstead conducted with Daniela Cuadra and Abeline Kidane, both of whom stayed at the motel during the relevant period. Cuadra identified Wheeler from photographs and provided the three phone numbers subject to the search warrants. The affidavit states the detectives located a booking photograph of plaintiff and confirmed he was the same person in the video. Cuadra stated Wheeler was her heroin dealer and that he climbed a fence to get to the motel, usually wore an expensive brown leather back pack, and always made phone contact before his arrival. Cuadra stated Wheeler was in her room until about a half-hour prior to the shooting and, about twenty minutes after the police arrived, called her repeatedly to inquire about her welfare and the police activity. Kidane described Wheeler's presence in the motel prior to the shooting and a later call to Cuadra. The affidavit does not mention that an examination of Cuadra's phone did not reveal the calls she described receiving from Wheeler shortly after the shooting. (*See id*., ¶ 4.41.)

On October 5, 2016, Olmstead obtained a warrant to search Wheeler's home and person

REPORT AND RECOMMENDATION
PAGE - 4

and to seize evidence.  The warrant affidavit contains and omits the same information provided in relation to the cell phone warrants and describes searches resulting from those warrants as revealing phone activity using cellular towers close to the motel just prior to the shooting.  (Dkt. 14, Ex. 13.)  It states the results of the warrant from one phone showed the number was not acquired and activated until the day after the shooting.  The affidavit does not mention that Cuadra's phone did not show calls allegedly received from Wheeler after the shooting or that Wheeler's cell phone records did not show any such calls.  (*See* Dkt. 8, ¶ 4.55.)  Nor does it describe calls Wheeler did place and receive around the time of the shooting, cell tower data placing him in Renton at the time Falgout reported seeing the suspect in an apartment complex across the street from the motel, or that the records showed Wheeler travelled out of State during the time Newell reported frequently seeing him at the motel.  (*See id*., ¶¶ 4.46, 4.56.)  The affidavit states that, at the scene of the homicide, Newell "and others" described a brown leather backpack.  (Dkt. 14, Ex. 13 at 5.)  It notes Cuadra's report plaintiff drove a silver Honda Pilot and that police later identified Wheeler's car as a "new white Ford Fusion" and his girlfriend's car as a silver Honda Pilot.  (*Id*.)

The State of Washington, also on October 5, 2016, charged Wheeler as described above.  The Certification for Determination of Probable Cause signed by Broggi includes descriptions of the suspect from Meyers  ("shorter, but slender with dreadlocks") and Newell ("about 6-0 with a skinny build . . . wearing dark clothing, baseball cap, and a brown suede backpack" and driving away in a "dark colored older sports car"), the events on the night of the shooting, including a rock thrown at a window prior to the argument, and information obtained from Cuadra and Kidane.  (*Id*., Ex. 1.)  Falgout is not mentioned.  The certification states that Newell, based on still photos from surveillance footage, identified "a male with a tan backpack, grey sweat suit and [a] baseball hat" and was "90% certain" this man was the shooter.  (*Id*. at 3.)  It states the man identified appears

REPORT AND RECOMMENDATION
PAGE - 5

on the Motel 6 footage on several dates, including the date of the shooting, and was wearing a tan backpack on each occasion. The affidavit also states neither Newell, nor Meyers identified Wheeler when shown a photographic lineup. It notes one cell phone search warrant indicated the use of the phone "before the time of homicide in the area of [the] incident[.]" (*Id*. at 4.)

## DISCUSSION

In alleging Broggi and Olmstead made false statements in and omitted material facts from the warrant affidavits and probable cause certification, plaintiff points to differences between witness descriptions and his appearance and vehicle(s); the fact only Newell described a brown leather backpack and was shown the photos of him with a backpack; that he was not identified in the photo lineup; Newell's report of seeing him some twenty times in a period in which he appeared on surveillance only three times and had traveled out of State; phone records showing he did not call Cuadra on the night of the shooting and placing him in Renton at the time Falgout reported seeing the suspect in SeaTac; and the absence of evidence associating him with a rock or other item thrown at the motel or with the argument leading up to the shooting. He alleges neither Cuadra, nor Kidane were reliable witnesses, that both were criminal suspects with warrants or changes pending against them, and that both were rewarded by the detectives for their false, incriminating statements.

Plaintiff alleges the material exculpatory evidence withheld included, but was not limited to, emails between Broggi and the prosecutor; emails between Broggi and Newell; text messages between Broggi and Cuadra; records related to Cuadra's phone and to payments made to her by Broggi and Olmstead; other evidence of favorable treatment given Cuadra and Kidane; and communications to Broggi and Olmstead regarding other potential suspects disregarded due to their focus on Wheeler. He alleges the liability of King County by condoning and ratifying the

REPORT AND RECOMMENDATION
PAGE - 6

1    conduct of its officers and agents.

2        Defendants argue plaintiff's malicious prosecution claim should be dismissed because a

3    trial court ruling denying his motion to dismiss based on insufficient evidence satisfies the

4    elements of collateral estoppel and precludes plaintiff from establishing a want of probable cause.

5    They argue that, after setting aside all allegedly false statements and omissions, the search warrant

6    affidavits supported a finding of probable cause.  Defendants maintain plaintiff's due process claim

7    necessarily fails because the alleged exculpatory evidence was disclosed and utilized by the

8    defense at trial, and also seek dismissal of the claims against King County.  They ask that, in

9    considering their motion, the Court take judicial notice of materials including certified transcripts

10   from the criminal trial and documents necessarily relied on in the First Amended Complaint.

11   A.    Standard of Review

12       Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to

13   state a claim upon which relief can be granted.  In considering a Rule 12(b)(6) motion, the Court

14   must determine whether the complaint alleges factual allegations stating a claim for relief that is

15   "'plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

16   *v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

17   factual content that allows the court to draw the reasonable inference that the defendant is liable

18   for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  While detailed factual

19   allegations are not necessary, a complaint must offer "more than labels and conclusions" and

20   contain more than a "formulaic recitation of the elements of a cause of action[.]"  *Twombly*, 550

21   U.S. at 555.  Dismissal is appropriate if the complaint fails to state a cognizable legal theory or

22   fails to provide sufficient facts to support a claim.  *Shroyer v. New Cingular Wireless Servs., Inc.*,

23   622 F.3d 1035, 1041 (9th Cir 2010).  In considering the motion to dismiss, "[a]ll well-pleaded

REPORT AND RECOMMENDATION
PAGE - 7

1    allegations of material fact in the complaint are accepted as true and are construed in the light most

2    favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th

3    Cir. 2013) (cited source omitted).

4    B.    Materials Considered

5        As a general matter, the Court may not consider material beyond the complaint in ruling

6    on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).[1]  Exceptions to

7    this rule include material properly submitted as a part of the complaint and documents not

8    physically attached to the pleading if the contents are alleged in the complaint and no party

9    questions the authenticity. *Id*.  In addition, under Federal Rule of Evidence 201, a court may take

10   judicial notice of "'matters of public record.'"  *Id*. at 688-89 (quoting *Mack v. South Bay Beer*

11   *Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).  Specifically, a court may take judicial notice of a

12   fact "not subject to reasonable dispute" because the fact "can be accurately and readily determined

13   from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

14       Defendants ask the Court to consider seventeen exhibits attached to a declaration in support

15   of their motion to dismiss.  (Dkt. 14.)  Plaintiff does not object to consideration of several

16   documents, including the information charging plaintiff and certification of probable cause (*id*.,

17   Ex. 1) and the search warrants and warrant affidavits for plaintiff's phone, home, and arrest (*id*.,

18   Exs. 11-14).  The Court agrees these documents are properly considered given that they are

19   referred to extensively within plaintiff's pleading and/or form a basis for his claims. *United States*

20   *v. Ritchie*, 342 F.3d 903, 907-09 (9th Cir. 2003).  That is, plaintiff specifically alleges the charges

21   against him were untrue and that defendants' affidavits and certifications submitted in support of

22

23       [1] Where matters outside the pleadings are presented and not excluded by the Court, the motion must be treated as one for summary judgment and disposed of under Rule 56. Fed. R. Civ. P. 12(d).

those charges were false and misleading.  (*See* Dkt. 8.)

Plaintiff also, for purposes of considering defendants' motion only, does not object to the Court's consideration of the transcript of the oral ruling of King County Superior Court Judge John Erlick denying a motion to dismiss at the close of the prosecution's case in plaintiff's criminal trial.  (Dkt. 14, Ex. 10.)  Plaintiff does object to the remaining exhibits proffered by defendants, including partial transcripts of testimony from Newell, Broggi, Cuadra, and other witnesses at trial (*id*., Exs. 2-9), portions of a reply brief plaintiff filed during the criminal trial (*id*., Ex. 15), a copy of a September 7, 2016 e-mail (*id*., Ex. 16), and a list of trial exhibits.

Matters of public record properly subject to judicial notice include "documents on file in federal or state courts."  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).  Courts may therefore, in ruling on a Rule 12(b)(6) motion, consider pleadings, orders, and other court filings or records of administrative bodies.  *Del Puerto Water Dist. v. United States Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1233 (C.D. Cal. 2003) (citing *Mack*, 798 F.2d at 1282).

Defendants provide the entirety of the transcript of Judge Erlick's mid-trial ruling denying plaintiff's motion to dismiss.  (Dkt. 14, Ex. 10.)  The transcript reflects Judge Erlick's decision to not transcribe the oral ruling into a written court order.  (*See id*. at 145:18-25).  Plaintiff does not object to the Court's consideration of the transcript for the purpose of considering defendants' motion.  The Court, for these reasons, finds this document subject to judicial notice.

Defendants argue the remaining trial transcripts show all of the alleged misstated or omitted facts were fully explored at trial and before Judge Erlick when he denied plaintiff's motion to dismiss, and therefore support the assertion of collateral estoppel.  Defendants, however, provide only select and incomplete excerpts of testimony, omitting the vast majority of testimony and other

REPORT AND RECOMMENDATION
PAGE - 9

1    evidence proffered at trial, including evidence specifically relied on by Judge Erlick in his decision

2    denying plaintiff's halftime motion.  (*See id*., Ex. 10 and *infra* at 13-14.)  The excerpts are not,

3    moreover, ultimately relevant to the Court's determination on the issue of collateral estoppel, as is

4    reflected in the discussion below.  The Court thus declines to take judicial notice of the excerpts

5    of witness testimony.  (Dkt. 14, Exs. 2-9.)

6           The Court likewise declines to take judicial notice of the remaining documents offered in

7    support of defendants' motion.  The state court reply brief is incomplete, containing only portions

8    of the argument and a single exhibit consisting of a redacted email chain, while the additional copy

9    of an email from Broggi is unaccompanied by any prior or subsequent emails.  (*See* Dkt. 14, Exs.

10   15-16.)  As with the excerpts of trial testimony and as reflected below, the Court does not find

11   consideration of these documents necessary for a ruling on defendants' motion.  Finally, while

12   identifying a list of trial exhibits as an exhibit to the declaration filed (*see id*., ¶18), defendants did

13   not provide that document to the Court.

14   C.     Motion to Dismiss

15          1.     Malicious prosecution and collateral estoppel:

16          Plaintiff avers a state law claim of malicious prosecution.  To maintain this action under

17   Washington law, plaintiff must show:  (1) the prosecution was instituted or continued by the

18   defendant; (2) there was want of probable cause for the institution or continuation of the

19   prosecution; (3) the proceedings were instituted or continued through malice; (4) the proceedings

20   terminated on the merits in favor of the plaintiff or were abandoned; and (5) the plaintiff suffered

21   injury or damage as a result of the prosecution.  *Bender v. City of Seattle*, 99 Wn.2d 582, 593, 664

22   P.2d 492 (1983); *accord McCarthy v. Barrett*, 804 F. Supp. 2d 1126, 1126 (W.D. Wash. 2011).

23          Probable cause is a complete defense to a claim of malicious prosecution.  *Hanson v. City*

REPORT AND RECOMMENDATION
PAGE - 10

*of Snohomish*, 121 Wn.2d 552, 558, 852 P.2d 295 (1993).  "Probable cause must be determined at the time the arrest is made." *Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1995); *accord Nieves v. Bartlett*, __ U.S. __, 139 S. Ct. 1715, 1728 (2019); *State v. Gillenwater*, 96 Wn. App. 667, 670, 980 P.2d 318 (1999).  *See also State v. Terrovona*, 105 Wash.2d 632, 643, 716 P.2d 295 (1986) ("Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.")  It cannot be supported by information gained after an arrest.  *Allen*, 73 F.3d at 236; *State v. Mance*, 82 Wn. App. 539, 541-42, 918 P.2d 527 (1996).

Defendants argue plaintiff is barred by collateral estoppel from establishing a want of probable cause, a necessary element of his claim of malicious prosecution.  They point to Judge Erlick's ruling as establishing the existence of probable cause for the challenged searches and arrest.  Defendants argue that, if the facts presented at trial were sufficient to support a guilty verdict, they were more than sufficient to establish the lower standard of proof for probable cause at the time charges were initiated.  They assert Judge Erlick made his determination with knowledge of all misstatements and omissions now alleged by plaintiff.

In determining the preclusive effect of a state court judgment, a federal court looks to the preclusion laws of that state.  *Gupta v. Thai Airways Int'l, LTD*, 487 F.3d 759, 765 (9th Cir. 2007).  Application of collateral estoppel under Washington law requires proof of the following:

> (1) the issue in the prior and current action is identical, (2) the prior action ended in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action, and (4) the application of collateral estoppel would not work an injustice.

*Afoa v. Port of Seattle*, 191 Wn.2d 110, 131, 421 P.3d 903 (2018).  Collateral estoppel "prevents

REPORT AND RECOMMENDATION
PAGE - 11

a party from relitigating issues that have been raised and litigated by the party in a prior proceeding." *Clark v. Baines*, 150 Wn.2d 905, 912, 84 P.3d 245 (2004). All four of the above-described elements must be satisfied for collateral estoppel to apply. *Id.*

The opportunity to challenge a probable cause determination in a prior state court criminal proceeding may bar a litigant from re-litigating the issue in a subsequent action. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004); *Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994). *See also Fontana v. City of Auburn*, No. C13-245-JCC, 2014 WL 4162528 at *7 (W.D. Wash. Aug. 21, 2014) (collateral estoppel barred re-litigation of probable cause finding by municipal court); *Wakgira v. City of Seattle*, No. C08-1108-JLR, 2009 WL 2406330 at *15 (W.D. Wash. Aug. 3, 2009) (collateral estoppel barred claims for false arrest, false imprisonment, and malicious prosecution because issue of probable cause had already been determined by the state court). This is true even where the individual was not convicted in the prior action. *See Haupt*, 17 F.3d at 288-89; *Fontana*, 2014 WL 4162528 at *8; *Wakgira*, 2009 WL 2406330 at *14.

For the first collateral estoppel requirement to be met, the issue resolved in the prior proceeding must be identical to the issue resolved in a claim for false arrest or malicious prosecution, "namely, whether the evidence supports a finding of probable cause." *Wige v. City of L.A.*, 713 F.3d 1183, 1185 (9th Cir. 2013). Where the evidence known to the arresting officer is not materially different from the evidence presented in state court, a state court finding of sufficient evidence to stand trial is a finding of probable cause to arrest. *Id.* at 1185-86. *See, e.g.*, *Haupt*, 17 F.3d at 289 (finding identical issues where the evidence adduced at the preliminary hearing was available and known to officers at the time of arrest). However, "if the evidence known to the arresting officer *is* materially different . . . the identity-of-issues requirement will not be met." *Wige*, 713 F.3d at 1186 (emphasis in original). Collateral estoppel would not apply if

REPORT AND RECOMMENDATION
PAGE - 12

the state judge based a determination of probable cause on evidence obtained after the arrest. *See, e.g.*, *id.* ("A magistrate judge's finding of probable cause based on the testimony of two witnesses, for example, obviously does not resolve whether the officers had probable cause to arrest if only one witness was available and known to them at the time of arrest.") (cited sources omitted); *Haupt*, 17 F.3d at 289 ("[I]f after arrest but before the preliminary hearing additional evidence of a defendant's guilt is discovered, and that evidence is presented at the preliminary hearing, the probable cause determination at the hearing would not be conclusive as to whether there was probable cause to arrest.")  Nor would collateral estoppel apply "when the decision to hold the defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials." *Awabdy*, 368 F.3d at 1068 (citing *Haupt*, 17 F.3d at 289).  In such a case, there would not be an identity-of-issues because the evidence available and known at the time of the arrest would differ from the evidence presented to a court. *Wige*, 713 F.3d at 1186.

In this case, plaintiff brought a halftime motion to dismiss pursuant to *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).  He challenged "whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt." *Id.* at 220-22 (relying on standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).  This challenge necessarily required the judge to consider evidence "adduced at the trial." *Jackson*, 443 U.S. at 324.  It also, as reflected below, did not involve an identical issue to the issue of probable cause at the time of the searches and arrest of plaintiff.

As plaintiff observes, Judge Erlick's denial of his motion specifically and explicitly relied on the testimony of a witness – a "Ms. Ault" – whose name and allegations do not appear in the warrant affidavits or certification of probable cause.  Nor is this witness mentioned in the First

Amended Complaint.  Contrary to defendants' contention, Judge Erlick did not merely reference Ms. Ault while clearly basing his ruling on evidence known at the time of arrest.  In fact, after noting the absence of "any credible positive identification" of plaintiff from eyewitness testimony, Judge Erlick ruled:

> The Court does agree with the defense that Mr. Wheeler's uncontested presence at or immediately prior to the shooting is insufficient for finding someone guilty.  However, I believe that there is additional evidence to support the State's case, and that is that, as I understand the State's theory of the case, the shooter got into an argument with the victim and Mr. Newell that essentially continued to the other side of the fence.
>
> Now, the defense did a commendable job in impeaching Mr. Newell about that argument, and the circumstantial evidence also supports the defense theory that there was no such argument.
>
> *On the other hand, the evidence presented by the State through Ms. Ault corroborates Mr. Newell's testimony that there was such an argument*.  And of course, at this stage it would be inappropriate for the Court to do any weighing of credibility or such.
>
> *So if we look just at Ms. Ault's testimony*, we have her observation of this argument on the motel side or east side of the fence with an individual who the jury could infer was Mr. Wheeler. Even though we don't see the argument, we do see Mr. Wheeler in that parking lot at approximately the time that there would be an argument.

(Dkt. 14, Ex. 10 at 172:21-173:18 (emphasis added).)  The only other factors mentioned by the judge include that "almost all witnesses," with the possible exception of Falgout, testified to hearing the argument over the fence, that only Meyer initially identified seeing a second person, and that Ms. Ault could have observed a person other than Wheeler.  (*Id*. at 173:19-174:9.)  Judge Erlick concluded the jury should consider issues such as opportunity, motive, location, and the existence of reasonable doubt, and found sufficient circumstantial evidence to deny plaintiff's motion.  (*Id*. at 174:10-20.)

REPORT AND RECOMMENDATION
PAGE - 14

1    The trial court, in sum, considered and deemed significant to its determination evidence

2    that was not available or known to officers at the time of plaintiff's arrest.  The evidence known

3    to the officers was materially different from that presented to the court.  This remains true whether

4    or not the trial court was aware of all misstatements or omissions alleged by plaintiff.  Nor is it

5    clear, based on the limited record before this Court, whether the trial court considered any other

6    previously unavailable evidence in reaching its conclusion.  Because it cannot be said the issue

7    resolved in the state court criminal proceeding is identical to the issue of whether there was want

8    of probable cause for the institution or continuation of the prosecution of plaintiff, defendants do

9    not establish the identical issues required for application of collateral estoppel to the claim of

10    malicious prosecution.

11        2.    Judicial deception and qualified immunity:

12    Plaintiff alleges Detectives Olmstead and Broggi included false and misleading statements

13    of material facts and omitted material facts in the search warrant affidavits and certification of

14    probable cause.  He contends these statements and omissions were made knowingly and with

15    reckless disregard for the truth and his constitutional rights.  He avers the violation of his Fourth

16    and Fourteenth Amendment rights through the unreasonable search and seizure of his cell phone

17    records and home, and his arrest and pre-trial detention without probable cause.

18    The Fourth Amendment protects a person's rights "to be secure in their persons, houses,

19    papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  It also

20    prohibits a search conducted pursuant to "an ill-begotten or otherwise invalid warrant."  *Bravo v.*

21    *City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).  Where a search warrant is mandated,

22    the reasonableness of search and seizure is measured in terms of whether probable cause exists.

23    *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 534 (1967).  Probable cause

REPORT AND RECOMMENDATION
PAGE - 15

1  "is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not

2  readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232

3  (1983). With an affidavit in support of a search warrant, the test for probable cause asks whether,

4  given the totality of the circumstances, there is a fair probability evidence of a crime will be found.

5  *Id*. at 238. A reviewing court gives deference to a judge's determination of probable cause, unless

6  the affidavit contains a knowing or reckless falsity and/or lacks a substantial basis for determining

7  the existence of probable cause. *United States v. Leon*, 468 U.S. 897, 914-15 (1984).

8       To adequately state a § 1983 claim of "judicial deception," a plaintiff must plead facts

9  plausibly showing the inclusion of deliberately false statements or omissions or other reckless

10  disregard for the truth in warrant affidavits and that the falsifications or omissions were material

11  to the finding of probable cause. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th

12  Cir. 2002) (citing *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)). Materiality, which is a

13  question for the court, requires a demonstration the warrant would not have issued with false

14  information redacted or omitted information restored. *Smith v. Almada*, 640 F.3d 931, 937 (9th

15  Cir. 2011) (citation omitted).

16       Defendants assert their entitlement to qualified immunity because the search warrant

17  affidavits set forth probable cause regardless of alleged misstatements and omissions. Government

18  officials are immune from civil liability if "in performing discretionary functions . . . their conduct

19  does not violate clearly established statutory or constitutional rights of which a reasonable person

20  would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity

21  protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v.

22  al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The

23  Court must determine whether (1) the alleged conduct violated a constitutional right and (2) the

REPORT AND RECOMMENDATION
PAGE - 16

right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).  For purposes of considering a motion to dismiss, the Court considers an official's conduct "*as alleged in the complaint*[.]" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original).

The standard for qualified immunity applied to an allegation of judicial deception is governed by *Franks v. Delaware*, 438 U.S. 154 (1978).  *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997) (citing *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991)).  *Franks* established a criminal defendant's right to an evidentiary hearing with a showing of deliberate or reckless disregard for the truth in a search warrant affidavit and a demonstration that, but for the dishonesty, the affidavit would not support a finding of probable cause.  *Id*. (citing *Franks*, 438 U.S. at 171-72).  With a civil rights claim,

> if an officer "submitted an affidavit that contained statements he knew to be false or would have known to be false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . he cannot be said to have acted in a reasonable manner," and the shield of qualified immunity is lost.

*Id*. (quoted sources omitted).  "Whether the alleged judicial deception was brought about by material false statements or material omissions is of no consequence."  *Id*. at 973 (citing *United States v. Stanert*, 762 F.2d 775, *as amended*, 769 F.2d 1410 (1985)).

With a motion for summary judgment, "'[t]he plaintiff alleging judicial deception must make a substantial showing of deliberate falsehood or reckless disregard for the truth and establish that but for the dishonesty, the challenged action would not have occurred.'"  *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (quoting *Hervey*, 65 F.3d at 788-89 ("the plaintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause")).  *Accord*

REPORT AND RECOMMENDATION
PAGE - 17

*Liston*, 120 F.3d at 973.    A Court considers "'whether the affidavit, once corrected and supplemented, establishes probable cause.'"    *Bravo*, 665 F.3d at 1084 (citations omitted).    "If probable cause remains after amendment, then no constitutional error has occurred."    *Id*.

In relation to the pending motion to dismiss, the parties here both direct the Court to reconstruct and consider the warrant affidavits without the alleged misstatements and omissions. They also agree that, if the Court finds the alleged misstatements and omissions material, the defense of qualified immunity is lost.    *Chism v. Washington*, 661 F.3d 380, 393 (9th Cir. 2011). *See also Butler*, 281 F.3d at 1024 ("[N]o reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in seeking a warrant. Accordingly, should a factfinder find against an official on this state-of-mind question, qualified immunity would not be available as a defense.")

Defendants assert probable cause based on the following:    Newell's description of the shooter as a black male wearing a tan backpack; Newell's report of seeing the shooter climb the fence both immediately prior to the shooting and on other occasions; that Newell surmised the person he saw was selling narcotics to people at the motel; surveillance video showing a black male carrying a tan backpack around the time of the shooting; Newell's statement the man in still photographs from the video surveillance footage appeared to be the shooter; Cuadra and Kidane's identification of plaintiff from photographs and report he was at the motel on the night of and left shortly before the shooting; Cuadra's report plaintiff came to the motel to sell her heroin and usually parked beyond and had to climb over the fence to get to the motel; plaintiff's prior convictions for firearm-related offenses and narcotics; and the phone numbers Cuadra provided and her report plaintiff usually made phone contact before arriving.    Defendants argue, viewed in totality, these facts provided a fair probability evidence of the crimes, including plaintiff's

REPORT AND RECOMMENDATION
PAGE - 18

approximate location at the time of the shooting, would be found in cell phone records.

Defendants deny the impact of alleged omissions.  They assert that, while unable to identify plaintiff from a photographic montage, neither Newell, nor Meyer had interacted with plaintiff at close range, in good lighting.   They note Cuadra and Kidane identified plaintiff from the surveillance photographs, which detectives compared to other known photos of plaintiff. Defendants minimize the significance of the minimal surveillance footage of plaintiff and assert an absence of evidence he lacks access to a dark sedan.  They posit a fair probability the shooter was the black male with the tan backpack seen arriving and leaving as described by Newell and that that individual was Wheeler.  Defendants further argue the phone records confirmed what the surveillance video/photos, Newell's identification, and the information from Cuadra and Kidane had already established by a fair probability:  that plaintiff was in the vicinity of the motel at the time of the shooting.  They deny the partial nature of the cell phone records was exculpatory, noting one phone had not been activated until the day after the shooting.

The search warrant affidavits misstated that both Newell and Meyer were shown photographs of plaintiff and that both agreed he "appeared to be the same person who shot Love." (Dkt. 14, Ex. 11 at 3.)  As alleged by plaintiff, a corrected affidavit would reflect the photographs were shown only to Newell, who stated "he thought it was the photo 'with the backpack' and that he needed to see a better photo."  (Dkt. 8, ¶4.39.)  Because only Newell identified the shooter as wearing a backpack, the affidavit in support of the search of plaintiff's property and person misstated that, "[a]t the scene of the homicide on 8/13/16, witness Newell *and others* described a brown leather backpack." (Dkt. 14, Ex. 13 at 5 (emphasis added).)

Plaintiff also alleges numerous omissions.  The affidavits do not include any information from Falgout, including his 911 call some thirty-five minutes after the shooting, identifying the

REPORT AND RECOMMENDATION
PAGE - 19

1    suspect as wearing "all black and a black hoodie" and taking off in a "little black car", and his

2    sighting of the suspect in an apartment complex across the street from the motel.  (Dkt. 8, ¶¶4.11-

3    .13.)  They do not include Newell's similar report the suspect drove away in a dark sports car or

4    sedan, and describe only plaintiff's silver and/or white cars.  The affidavits further omit witness

5    descriptions beyond race, including clothing (other than the brown backpack), height, weight, and

6    hair, and therefore do not allow for consideration of discrepancies between the descriptions and

7    plaintiff's appearance.  Nor do the affidavits include the results of the photographic lineups or

8    information pertinent to the evidence obtained from Cuadra and Kidane.  With respect to the latter,

9    the affidavits omit that Cuadra's phone did not show phone calls from plaintiff shortly after the

10   shooting, or any information as to pending warrants or charges or benefits received from the

11   detectives.

12           The affidavit seeking a search warrant for plaintiff and his property did not address calls

13   plaintiff did make and receive around the time of the shooting, the absence of alleged calls to

14   Cuadra, and cell tower data placing plaintiff in Renton at the time Falgout reported seeing the

15   suspect in SeaTac, as well as showing plaintiff traveled out of state when Wheeler reported his

16   frequent presence at the motel.  While defendants deem significant the cell phone evidence

17   confirming plaintiff's presence in the area prior to the shooting, this fact had already been

18   established through the surveillance video and statements from Cuadra and Kidane.  In addition,

19   the fact one cell phone subject to a search warrant had not been activated until the day after the

20   shooting is not relevant to the issue of whether defendants omitted material information relating

21   to other phones plaintiff did utilize prior to and on the day of the shooting.

22           Consideration of the totality of the circumstances is necessary to the determination of

23   probable cause.  Defendants do not here adequately account for the omissions and misstatements

REPORT AND RECOMMENDATION
PAGE - 20

alleged by plaintiff and, at this early stage in the case, the record does not allow for consideration of all relevant evidence.  With an assertion of qualified immunity in a Rule 12(b)(6) motion, "'dismissal is not appropriate unless [the Court] can determine, based on the complaint itself, that qualified immunity applies.'"  *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).  Taking plaintiff's allegations as true and drawing all reasonable inferences in his favor, the First Amended Complaint alleges sufficient facts plausibly suggesting entitlement to relief with respect to the claim of judicial deception. Defendants do not, at least at this juncture, establish their entitlement to qualified immunity.  *See, e.g., Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (concluding, in light of the fact all allegations in the complaint must be regarded as true on a motion to dismiss, "dismissal [on qualified immunity grounds] for failure to state a claim under 12(b)(6) is inappropriate.")[2]

       3.   <u>Exculpatory evidence</u>:

Defendants contend plaintiff's due process claim under *Brady v. Maryland*, 373 U.S. 83 (1963), necessarily fails because the alleged exculpatory evidence was disclosed and utilized by the defense at trial.  *See U.S. v. McKinney*, 758 F.2d 1036, 1049 (5th Cir. 1985) (no violation under *Brady* where evidence favorable and material to the defense is disclosed during the trial). Defendants relate this argument to the allegation regarding the September 7, 2016 email from Broggi to the prosecutor indicating Newell thought the shooter was "'the one with the backpack,' but that he would have to see a better photo to be sure."  (Dkt. 8, ¶¶ 4.23, 4.69.)

The Court, for the reasons stated above, does not here consider documents proffered by

---

[2] As plaintiff observes, he is "not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity[,]" and "[b]ecause a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."  *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (quoted sources and internal quotation marks omitted).

REPORT AND RECOMMENDATION
PAGE - 21

1   defendants in support of this argument.  (*See* Dkt. 14, ¶¶16-17.)  Nor does the Court find plaintiff's

2   claim subject to dismissal.  Plaintiff did not limit his exculpatory evidence allegation to the

3   September 7, 2016 email.  The First Amended Complaint avers Broggi and Olmstead withheld

4   "numerous other pieces of material exculpatory evidence," including, but not limited to, emails

5   between Broggi and Newell; text messages between Broggi and Cuadra; records related to

6   Cuadra's phone and to payments made to her by Broggi and Olmstead; other evidence of favorable

7   treatment given Cuadra and Kidane; and communications to Broggi and Olmstead regarding other,

8   disregarded potential suspects.  Defendants raise their argument solely in relation to a single piece

9   of evidence plaintiff alleges was improperly withheld, do not address any of the other evidence

10  identified in relation to this claim, and therefore do not establish plaintiff's failure to state a claim

11  upon which relief may be granted.[3]

12          Defendants also maintain the fact of plaintiff's acquittal is fatal to his claim, noting other

13  circuits have held that a defendant who has been acquitted cannot maintain a *Brady* claim.  (*See*

14  Dkt. 13 at 22-23.)  However, as plaintiff notes, the Ninth Circuit has not held as such and, pursuant

15  to controlling precedent, "an acquittal does not preclude a Section 1983 claim arising out of a

16  constitutional violation."  *Soo Park v. Thompson*, 851 F.3d 910, 923-27 & n.19 (9th Cir. 2017).[4]

17  For this reason, and for the reasons stated above, the Court does not find a failure to state a claim

18

19          [3] Defendants also assert, in a footnote and with citation to a Fourth Circuit case, that a due process
20  violation occurs only where a law enforcement officer fails to disclose material exculpatory evidence to the
    prosecutor.  (Dkt. 13 at 23, n.3.)  This assertion is similarly insufficient to establish plaintiff's failure to
21  state a claim and is not further addressed herein.
           [4] In *Park*, 851 F.3d at 925, n.16 and 927, n.19, the Ninth Circuit recognized different holdings of
22  other circuit courts on this issue and described non-binding comments in *Smith v. Almada*, 640 F.3d 931
    (9th Cir. 2011), on the question of whether a *Brady* violation is actionable under § 1983 after an acquittal.
23  The Court clarified that, in the end, *Almada* did not reach the question and it remained that an acquittal did
    not preclude a section 1983 claim arising out of a fundamental constitutional violation.

REPORT AND RECOMMENDATION
PAGE - 22

upon which relief may be granted.

4.     Municipal liability:

A local government unit or municipality can be sued under § 1983 with the identification of municipal "policy" or "custom" causing the alleged injury. *Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). A *Monell* claim of municipal liability may involve: (1) implementation of official policies or established customs that inflict constitutional injury; (2) acts of omission amounting to a policy, custom, or practice of "deliberate indifference" to constitutional rights; or (3) ratification of a subordinate's unconstitutional conduct by a local government official with final policy-making authority. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010), *overruled in part on other grounds in Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1070 (9th Cir. 2016).

To state a claim under *Monell*, the pleadings must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). The facts alleged must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

Plaintiff alleges King County is liable because it condoned and ratified the conduct of its officers and agents.[5]   He states "[p]olicy or custom may be inferred if, after constitutional

---

[5] The First Amended Complaint also averred municipal liability under principles of respondeat superior. However, in response to defendants' motion, plaintiff concedes such a claim is not allowed under current law and states it is alleged only to preserve the issue for appeal. Plaintiff also responded to defendants' assertion of a failure to identify a policy, custom, or practice serving as a "moving force" behind a constitutional violation in the form of deliberate indifference, *see Lee*, 250 F.3d at 681-82, by observing his allegation of municipal liability is based on a theory of ratification.

REPORT AND RECOMMENDATION
PAGE - 23

1   violations occurred], . . . officials took no steps to reprimand or discharge the[ir subordinates], or

2   if they otherwise failed to admit the [subordinates'] conduct was in error." *McRorie v. Shimoda*,

3   795 F.2d 780, 784 (9th Cir. 1986).  He asserts King County's policymakers plausibly ratified the

4   defendant detectives' conduct, noting King County here defends that conduct through its

5   Prosecuting Attorney's office, which was directly involved in plaintiff's prosecution.

6        Defendants argue the absence of factual allegations supporting the theory of ratification,

7   which requires facts suggesting an officer with final policymaking authority ratified an

8   unconstitutional action.  *See Ellins v. City of Sierra Madra*, 710 F.3d 1049, 1066 (9th Cir. 2013).

9   They deny mere defense of this lawsuit constitutes ratification.  *See Hulstedt v. City of Scottsdale*,

10  884 F. Supp. 2d 972, 1014 (D. Ariz. 2012) ("Ratification requires more than a supervisor's

11  subsequent approval of an unconstitutional act. 'To hold cities liable under section 1983 whenever

12  policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply

13  smuggle respondeat superior liability into section 1983 law.'") (quoting *Gillette v. Delmore*, 979

14  F.2d 1342, 1348 (9th Cir.1992)).

15       The Court agrees plaintiff provides minimal information regarding the allegation of

16  municipal liability through a theory of ratification.  However, while a close call, the Court finds

17  the allegation of municipal liability sufficient to survive defendants' motion to dismiss.

18  Alternatively, because further information supporting this claim could be obtained through

19  discovery, the Court recommends dismissal without prejudice and with leave to file an amended

20  complaint.  *See Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1234 (W.D. Wash. 2014) ("Where

21  claims are dismissed under Rule 12(b)(6), the court 'should grant leave to amend ... unless it

22  determines that the pleading could not possibly be cured by the allegation of other facts.'")

23  (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) and citing Fed. R. Civ. P. 15(a)(2)),

*aff'd*, 692 Fed. Appx. 491 (9th Cir. Jan. 1, 2007).

<u>CONCLUSION</u>

The Court, in sum, does not find plaintiff's claims subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Accordingly, defendants' motion to dismiss (Dkt. 13) should be DENIED in its entirety.  The Court alternatively recommends that only plaintiff's allegations against defendant King County be dismissed without prejudice and with leave to amend.

<u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>February 28, 2020</u>**.

DATED this <u>11th</u> day of February, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 25