The Honorable John C. Coughenour
United States District Court Judge
The Honorable Mary Alice Theiler
United States Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RODNEY WHEELER,

                          Plaintiff,

vs.

ELEANOR BROGGI, et al,

                        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:19-cv-01410-JCC-MAT

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

*Noted on Motion Calendar for:*
*October 23, 2020*

ORAL ARGUMENT REQUESTED

## I.    IDENTITY OF PARTY AND RELIEF REQUESTED

Defendants Detective Eleanor Broggi, Detective Matthew Olmstead and King County respectfully ask this Court to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 56. Plaintiff was tried and acquitted on murder, assault and unlawful possession of firearm charges in King County Superior Court. Plaintiff's state law malicious prosecution claim should be dismissed as a matter of law because the criminal trial court's ruling denying Plaintiff's "halftime" motion to dismiss satisfies the elements of collateral estoppel and precludes Plaintiff from establishing an essential element of malicious prosecution: want of probable cause. Plaintiff's due process claim should be dismissed as a matter of law because Plaintiff was acquitted, and also because all

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

alleged exculpatory evidence was disclosed to the prosecutor and was known Plaintiff at the time of trial. Plaintiff's Fourth Amendment claim should be dismissed because this Court can determine as a matter of law that, setting aside alleged misstatements and omissions, the affidavits established probable cause.

## II.  **ISSUES**

1. Is Plaintiff collaterally estopped from establishing want of probable cause as a matter of law when the King County Superior Court determined that there was sufficient evidence for a jury to find Plaintiff guilty of the crimes charged beyond a reasonable doubt? Yes

2. Is Plaintiff collaterally estopped from establishing want of probable cause when the King County Superior Court determined that there was sufficient evidence for a jury to find Plaintiff guilty of the crimes charged beyond a reasonable doubt and there was no material difference between the evidence presented at trial and the evidence known to the detectives at the time of charging? Yes.

3. Does Plaintiff's due process claim fail as a matter of law because the alleged exculpatory evidence was available and used by Plaintiff at his criminal trial? Yes.

4. Does Plaintiff's due process claim fail as a matter of law because Plaintiff was acquitted? Yes.

5. Does Plaintiff's Fourth Amendment claim fail as a matter of law because after setting aside the alleged misstatements and omissions there was sufficient probable cause for issuance of the search warrants? Yes.

6. Does Plaintiff's *Monell* claim fail as a matter of law because there was no constitutional violation?  Yes.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

III.   **FACTS**

Plaintiff was charged in King County Superior Court with murder in the second degree, assault in the first degree and unlawful possession of a firearm. Declaration of Ann Summers in Support of Defendants' Motion for Summary Judgment, Ex. 2. The jury trial began before the Honorable John Erlick in January of 2019. Dec. of Summers, Ex 3.[1] The State presented evidence that Justin Love was shot and killed in the parking lot of the Motel 6 in SeaTac at approximately 9:55 p.m. on August 31, 2016. RP 1/30/19 10-11, 42-43; 2/6/19 31, 77. A second victim, John Killarzoac, was struck by a stray bullet that penetrated the wall of the motel and struck him in his motel room on the first floor. RP 1/23/19 155-57.

Love and his two friends, William Newell and Michael Meyer, were construction workers from out of town who had been staying at the motel. RP 2/6/19 31-33. At the time of the shooting, Love, Newell and Meyers were engaged in a heated argument with the shooter. *Id.* at 55-58, 71, 75-77.

Newell testified that he and Love were in their room on the second floor when they thought something struck their motel window screen. *Id.* at 32, 49-51. Newell looked out the window and saw a black man outside whom he had previously seen coming and going from the motel. *Id.* at 51, 54. An argument ensued. *Id.* at 56-57. Newell and Love left the motel room, walked out to the parking lot, and continued to argue with the man, who had climbed over the fence that separated the parking lot from the street behind the motel. *Id.* at 68-70. Meyer, who had not been in the motel room when the argument started, joined them at the fence. *Id.* at 74.

---

[1] The transcripts of the criminal trial have been submitted to this Court as Exhibit 3 to the Declaration of Ann Summers. For ease of reference, portions of the transcript will be cited as "RP" by date of proceeding and page number.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

As Love, Newell and Meyer were standing at the fence and yelling at the man on the other side of the fence, the man pulled out a gun and fired two shots, killing Love and injuring Killarzoac. RP 2/6/19 76-77. Police found two shell casings from the shooting. RP 1/28/19 139. The casings were more than 70 feet from the fence. RP 1/27/19 320.

Newell described the shooter as a black man, about six feet tall, with a skinny build, wearing dark clothing, a baseball cap and a brown suede backpack. RP 2/6/19 53. Meyer gave a very different description. He described the man as short and slender with dreadlocks. RP 1/24/16 245. At trial, Meyer said he did not have a good opportunity to see the person because the area behind the fence was so dark. RP 1/30/19 28-29.

Three other witnesses that were identified at the scene of the crime and interviewed also testified at trial. Makin Yee, a teenager who lived in an apartment building behind the motel heard both arguing and gunshots. RP 1/28/19 112, 116. She looked out the window and saw two people in the motel parking lot. *Id.* at 117. She told police that she saw a black man wearing all black clothes. *Id.* at 124.

Jessica Hale was staying at the motel. RP 2/7/19 17. She was looking out her window when she saw two white men exit the motel and a black man on the other side of the fence. *Id.* at 23. It was very dark where the shooter was standing but she thought he was wearing a black hoodie and sweats or jeans. *Id.* at 24, 70. He was wearing a backpack. *Id.* at 26. She saw the shooting and saw Love fall as the shooter drove off. *Id.* at 50-53. She only saw one person on the other side of the fence. *Id.* at 57.

Brian Falgout was staying at the motel and had parked his truck just a few spaces from where Love was killed. RP 2/21/19 13-15. He did not observe the entire altercation and was looking at his phone and listening to music. *Id.* at 36, 37. He saw a black man wearing a hoodie

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

or dark clothing on the other side of the fence, but it was very dark. *Id.* at 18. He only saw one person on the other side of the fence. *Id.* He heard an argument and two "pops" and then the man walked away and drove off in what looked like a small black car. *Id.* at 20-21. He did not see the shooter again. *Id.* at 24.

The investigation focused on finding surveillance footage of the suspect. RP 2/20/19 141, 145. Detective Mellis reviewed video from the Motel 6 surveillance system for days. *Id*; 1/29/19 15, 34-35, 93. He found footage of a black man wearing a baseball cap and carrying a tan backpack who exited the motel directly below Love and Newell's motel window and climbed over the fence just a few minutes before the shooting. *Id.* at 63-65. Detective Mellis also found footage of what appeared to be the same man visiting the hotel on other dates carrying the same backpack.[2] *Id.* at 39, 44, 104-106. The surveillance footage was admitted at trial. *Id.* at 38.

Abeline Kidane and Daniela Cuadra were staying at the motel on August 31, 2016. RP 2/14/19 65-66. Detectives Broggi and Olmstead interviewed Cuadra on September 14, 2016, and interviewed Kidane on September 15, 2016. RP 2/20/19 148-50. They showed Cuadra screen shots of the man wearing the brown backpack and Cuadra identified him as Plaintiff Rodney Wheeler. *Id.* at 156. Cuadra testified that Plaintiff was at the motel on the night of the shooting and had left shortly before the shooting. RP 2/14/19 69. He also called her after the shooting to check on her welfare and urged her to check out of the motel. *Id.* at 156. Cuadra provided the detectives with three of Plaintiff's cell phone numbers. RP 2/20/19 186, 192-93. She herself used prepaid phones and changed her phone number frequently. RP 2/14/19 67.

---

[2] Detective Mellis created screen shots of this man, and Detective Broggi sent those screen shots to Newell via email. Dec. of Summers, Ex. 2. Newell advised Detective Broggi he was 90% sure that the man in the screen shots was the shooter. *Id.* However, testimony regarding this was excluded by the trial court. RP 2/6/19 23.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

After Cuadra identified the man in the surveillance footage as Plaintiff, Detective Broggi

administered a photographic montage containing Plaintiff's photograph to Newell and Meyer

more than two weeks after the shooting. RP 2/20/19 185.[3] They were unable to positively

identify anyone in the montage. *Id.* At trial, a defense expert testified that the longer after an

event a montage procedure is conducted the less reliable the result is. RP 2/26/19 81. If too much

time has elapsed, "you could infer that they didn't pick anybody because just too much time had

elapsed." *Id.* at 82. He also testified that cross-racial identifications are less reliable. *Id.* at 87.

Cell phone records from the one of Plaintiff's phones were obtained and showed that he

was near the Motel 6 at 9:54 and 9:55 p.m., the time of the shooting. RP 2/25/19 55, 77.

All but one of the civilian witnesses at trial were interviewed as part of the investigation

and were known to detectives prior to the filing of charges. Dec. of Summers, Ex. 1. The only

witness to testify at trial that was unknown to detectives prior to charging was Jeanette Ault. RP

2/19/19 14. Ault lived in a fourplex behind the Motel 6. *Id. at* 15. On the night of the shooting,

she heard an argument and looked out her window. *Id.* at 16-17. She saw a man in the parking lot

arguing with someone in the motel. *Id.* Men from inside the motel came outside to the parking

lot, but the man in the parking lot had climbed over the fence. *Id.* The man who climbed over the

fence had started to walk away, but walked back toward the motel as the men at the fence were

taunting him. *Id.* He pulled out a gun and fired at them. *Id.* She did not recall the shooter's

clothing and did not remember whether he was wearing a hat or a backpack. *Id.* at 27-28. After

the shooting, she saw the shooter run and heard a car speed away. *Id.* at 35. She saw no one else

---

[3] The defense expert also testified that without a reference point estimates of height and weight are unreliable, and that it is difficult to accurately perceive colors in the dark other than as shades of grey. RP 2/26/19 87, 93, 96.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   in the street and no other cars. *Id.* at 35. She did not call 911 or speak to the police at the time. *Id.*

2   at 15-16.

3       At the close of the State's case, Plaintiff moved to dismiss the charges. RP 2/25/19 163-

4   71. The trial court explained that although there was no witness who could positively identify

5   Plaintiff as the shooter, there was sufficient circumstantial evidence of Plaintiff's guilt for a jury

6   to find him guilty beyond a reasonable doubt. *Id.* at 172-74.

7       Plaintiff testified at trial. RP 2/26/19 179. He admitted that he was visiting Cuadra and

8   Kidane at the Motel 6 on the night of the shooting and that it was him on the surveillance

9   footage. *Id.* at 179, 181. He testified that when he walked outside the motel underneath Love and

10  Newell's window he heard people screaming at each other but he kept walking. *Id.* at 183. He

11  climbed over the fence and heard the people inside the motel say they were coming outside. *Id.*

12  at 184. He saw a man standing on the other side of the fence. *Id.* at 183. Plaintiff trotted to his car

13  and left. *Id.* at 185. He admitted calling Cuadra the day after the shooting. RP 2/27/19 66.

14      Plaintiff knew that police were asking about him before he was arrested. *Id.* at 70-71.

15  When arrested, he no longer had his expensive backpack. RP 2/26/19 192. He claimed it had

16  been stolen two days after the shooting. *Id*. He claimed his phones were also stolen. RP 2/27/19

17  63. He admitted that at the time of the shooting he sometimes drove a Toyota Camry, but his

18  girlfriend sold that car prior to his arrest. RP 2/26/19 203, 206, 208.

19      The jury acquitted Plaintiff. RP 3/1/19 6-7.

20      Plaintiff filed suit against Detective Eleanor Broggi, the lead detective in the case,

21  Detective Matthew Olmstead, the detective who submitted affidavits for search warrants, and

22  King County, alleging malicious prosecution and violation of his Fourth Amendment and due

23  process rights. Dkt. 8.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

IV.    **ARGUMENT**

A.    **Summary Judgment Standard Of Review**

Summary judgment should be granted only if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S. Ct.  2505, 91 L. Ed.2d 202 (1986). The

moving party bears the initial burden of establishing the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the

moving party properly makes and supports their motion, the nonmoving party "must set forth

specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed.

R. Civ. P. 56(e)).

B.    **Plaintiff Is Barred By Collateral Estoppel From Establishing Want Of Probable Cause, A Necessary Element Of His Malicious Prosecution Claim.**

1.    The Elements Of Collateral Estoppel Under Washington Law.

To determine the binding effect of the ruling from the criminal trial, this Court must

apply the rules governing collateral estoppel in Washington. *See Haring v. Prosise*, 462 U.S.

306, 313, 103 S. Ct.  2368, 76 L. Ed. 2d 595 (1983); *Davis v. Clark County, Wash.*, 966 F. Supp.

2d 1106 (W.D. Wash. 2013). Under Washington law, collateral estoppel applies if the following

elements are met: (1) identical issues; (2) a final judgment on the merits; (3) the party against

whom the plea is asserted must have been a party to or in privity with a party to the prior

adjudication; and (4) application of the doctrine must not work an injustice on the party against

whom the doctrine is to be applied. *Sprague v. Spokane Valley Fire Department*, 189 Wash.2d

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 8

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

858, 899, 409 P.3d 160 (2018). All four elements must be met. *Clark v. Baines*, 150 Wash.2d 905, 913, 84 P.3d 245 (2004). In Washington, collateral estoppel bars re-litigation of "issues actually litigated" and "necessarily decided" in a prior adjudication. *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 164 Wash.2d 768, 792, 193 P.3d 1077 (2008). Rulings from a criminal trial may serve as the basis for collateral estoppel in other proceedings. *Thompson v. State, Dept. of Licensing*, 138 Wash.2d 783, 800, 982 P.2d 601 (1999).

      2.    <u>The Criminal Trial Court's Ruling On The Motion To Dismiss Meets The Elements Of Collateral Estoppel.</u>

Of the four elements of collateral estoppel under Washington law, the second and third elements are indisputably met in this case. There was a final judgment on the merits in the criminal case and Plaintiff was the defendant in the criminal case. As to the fourth element, application of collateral estoppel would not work an injustice in this case. Under Washington law, courts consider whether the party against whom the estoppel is asserted had an incentive to vigorously litigate the issue in the prior litigation, as well as a full and fair opportunity to do so. *Hadley v. Maxwell*, 144 Wash.2d 306, 312, 27 P.3d 600 (2001). Plaintiff had a strong incentive to vigorously litigate the criminal case, and did so with the assistance of counsel.

As to the first element of collateral estoppel—identity of issues—this Court should hold that element is met as a matter of law by the "halftime" motion denying Plaintiff's motion to dismiss the criminal charges.

      3.    <u>The Criminal Trial Court's Ruling On The Motion To Dismiss Precludes Plaintiff From Establishing Want Of Probable Cause As A Matter Of Law.</u>

To maintain an action for malicious prosecution under Washington law, the plaintiff must prove that: (1) the prosecution was instituted or continued by the defendant; (2) there was want of probable cause for the institution or continuation of the proceeding; (3) the proceeding was

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 9

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  instituted or continued through malice; (4) the proceeding was terminated in favor of the plaintiff
2  or abandoned; and (5) the plaintiff suffered injury as a result of the prosecution. *Bender v. City of*
3  *Seattle*, 99 Wash.2d at 593.

4      A *prima facie* case of want of probable cause is established by proof that the criminal
5  proceedings terminated in favor of the plaintiff. *Peasley v. Puget Sound Tug & Barge Co.*, 13
6  Wash.2d 485, 499, 125 P.2d 681 (1942). The defendant may overcome the prima facie case with
7  proof of probable cause. *Id.* Proof of probable cause is a complete defense to an action for
8  malicious prosecution because "[t]he very gist of an action for malicious prosecution is want of
9  probable cause." *Noblett v. Bartsch,* 31 Wash. 24, 27, 71 P. 551 (1903). *See also Hanson v. City*
10 *of Snohomish*, 121 Wash.2d 552, 558, 852 P.2d 295 (1993). A previous finding of probable
11 cause can be preclusive.

12     At Plaintiff's criminal trial, Judge Erlick denied Plaintiff's motion to dismiss the charges
13 upon finding that the evidence presented by the State was sufficient for any rational trier of fact
14 to find the elements of the crimes beyond a reasonable doubt. RP 2/25/19 172-74. Judge Erlick's
15 ruling establishes probable cause as a matter of law.

16     The preclusive effect of criminal state court rulings in malicious prosecution actions has
17 been recognized in this circuit. *Haupt v. Dillard,* 17 F.3d 285, 289 (9th Cir. 1994) (holding that
18 state judge's finding that probable cause existed to hold a defendant over for trial barred
19 subsequent re-litigation as to whether probable cause existed). *See also Grega v. Pettengill*, 123
20 F. Supp.3d 517, 525, 530 (D.C. Vt. 2015); Restatement (Third) of Torts: Liab. for Econ. Harm §
21 22 TD (2018) (stating, "If a magistrate or jury considered the evidence on which the accusation
22 was based, and concluded that it justified the prosecution (or proved the guilt of the accused), the
23 accuser cannot be faulted for charging the accused with a crime.").

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 10

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1    Plaintiff previously relied on California cases in responding to Defendants' motion to

2 dismiss. However, California law gives preclusive effect to rulings that are equivalent to Judge

3 Erlick's denial of the motion to dismiss. Under California law, a denial of a defense motion for

4 summary judgment and "similar efforts at pretrial termination of the underlying case" establishes

5 probable cause and defeats a malicious prosecution claim. *Wilson v. Parker, Covert & Chidester*,

6 28 Cal.4th 911, 50 P.3d 733, 738 (2002). As the California Supreme Court noted, only actions

7 that are totally and completely without merit may form the basis for a malicious prosecution suit.

8 *Id.* at 736. Thus, the denial of summary judgment in the underlying action shows that the suit did

9 not totally lack merit. *Id.* In California, this is known as the "interim adverse judgment rule."

10 *Parris v. Latham & Watkins*, 3 Cal.5th 767, 400 P.3d 1, 8 (2017). Like a denial of summary

11 judgment, Judge Erlick's denial of Plaintiff's "halftime" motion to dismiss, decided at the end of

12 the State's case in chief, was an interim adverse judgment that shows the charges did not totally

13 lack merit.[4]

14    The preclusive effect of Judge Erlick's ruling as a matter of law is supported by the

15 Washington Supreme Court's decision in *Hanson, supra.* In that case, the plaintiff had been

16 prosecuted for shooting a convenience store clerk. *Hanson,* 121 Wash.2d at 554. Hanson was

17 initially convicted, but the conviction was reversed on appeal. *Id.*[5] On remand, Hanson was

18 acquitted at a second trial. *Id.* Hanson brought a malicious prosecution action. *Id.* While Hanon's

19 acquittal was *prima facie* evidence of want of probable cause, the Washington Supreme Court

20

21 [4] Ironically, in his motion to dismiss Defendants' counterclaim, Plaintiff argues that this Court's denial of Defendants' motion to dismiss this case is a prior determination that his lawsuit is legally sufficient and supported by probable cause. Dkt. 38, at 3. If true, then Judge Erlick's denial of the motion to dismiss,

22 based on evidence not just allegations, is likewise a prior determination that the criminal prosecution was supported by probable cause, and bars his malicious prosecution claim.

23 [5] The conviction was reversed due to an evidentiary error. In particular, the appellate court found that admission of fiction written by Hanson was irrelevant and prejudicial. *Hanson*, 121 Wash.2d at 555.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   held that the initial conviction was "conclusive evidence of probable cause." *Id.* at 560. The court

2   held that the malicious prosecution action was precluded because the initial conviction showed

3   that "there was enough of a case to persuade a jury of guilt beyond a reasonable doubt, and thus

4   is evidence that there was, at the very least, probable cause." *Id.* at 559. The same reasoning

5   should apply to the denial of a halftime motion. That ruling utilizes a standard that is appreciably

6   higher than the probable cause standard. Under Washington law, a criminal defendant may

7   challenge the sufficiency of evidence at the end of the State's case. *State v. Jackson*, 82 Wash.

8   App. 594, 607-08, 918 P.2d 945 (1996). The trial court considers the evidence and all reasonable

9   inferences from that evidence in the light most favorable to the State. *Id.* at 608. The standard

10  applied is whether any rational trier of fact could have found the essential elements of the crime

11  beyond a reasonable doubt. *State v. McReynolds*, 142 Wash. App. 941, 947, 176 P.3d 616

12  (2008).

13          In comparison, the probable cause standard is lower. "Probable cause exists where the

14  facts and circumstances within the arresting officer's knowledge and of which he has reasonably

15  trustworthy information are sufficient in themselves to warrant a *man of reasonable caution* in a

16  belief that an offense has been or is being committed." *Bender v. City of Seattle*, 99 Wash.2d

17  582, 597, 664 P.2d 492 (1983) (emphasis in original). The standard for a judicial determination

18  of probable cause for criminal charges is the same as that for arrest. *Gerstein v. Pugh*, 420 U.S.

19  103, 120, 95 S. Ct. 854, 866, 43 L. Ed. 2d 54 (1975). Thus, in denying the defense motion for

20  dismissal after the State rested its case, Judge Erlick made a determination that the evidence

21  exceeded the probable cause standard.

22          In its previous ruling, this Court opined that Defendants must show that the evidence at

23  trial was  not "materially different" than the evidence known to the detectives at the time of

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

charging, citing *Wige v. City of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir. 2013). Dkt. 27, at 6.[6]

Defendants respectfully urge this Court to reconsider that conclusion, in that there is no support

in Washington law for that requirement. It runs counter to *Hanson.* Like Plaintiff, Hanson was

ultimately acquitted. However, the Washington Supreme Court did not compare the evidence

presented at trial to the evidence known at the time of charging to determine if it was "materially

different" for purposes of collateral estoppel. Judge Erlick's denial of the motion to dismiss was

a judicial determination of probable cause that is analogous to the initial overturned conviction in

*Hanson.* Judge Erlick's ruling precludes Plaintiff's malicious prosecution claim as a matter of

law.

 The preclusive effect that a denial of a motion to dismiss at the close of the State's case in

a criminal trial has in a subsequent malicious prosecution action against law enforcement officers

is a question of first impression under Washington law, as this Court previously recognized. Dkt.

27, at 5. Defendants request that this question be certified to the Washington Supreme Court.

Wash. Rev. Code Ann. § 2.60.020. Certification is appropriate in this case because this issue of

state law has significant policy implications. *McKown v. Simon Prop. Group Inc.,* 689 F.3d

1086, 1091 (9th Cir. 2012). *See*  Washington Laws of 1984, ch. 133, § 1 (stating "The legislature

finds that a growing number of unfounded lawsuits, claims, and liens are filed against law

enforcement officers, prosecuting authorities, and judges, and against their property, having the

---

[6] A denial of a motion to dismiss at the close of the State's case at trial is very different from the
preliminary hearing determination at issue in *Wige*. The former occurs after the court has heard the entire
State's case. *Wige* nonetheless recognized that even in regard to preliminary hearings "the identity-of-
issues requirement will *generally be satisfied* because in most cases the issue resolved at the preliminary
hearing is identical to the issue that must be resolved in a false arrest or malicious prosecution action—
namely whether the evidence supports a finding of probable cause." 713 F.3d at 1185 (emphasis added).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  purpose and effect of deterring those officers in the exercise of their discretion and inhibiting the

2  performance of their public duties.")

3        4.    The Criminal Trial Court's Ruling On The Motion To Dismiss Precludes Plaintiff
              From Establishing A Necessary Element Of Malicious Prosecution Because The
4              Evidence At Trial Was Not Materially Different.

5        Judge Erlicks's ruling denying Plaintiff's motion to dismiss at the close of the State's

6  case satisfies the identity of issues element of collateral estoppel. Importantly, Judge Erlick made

7  this determination based on all the evidence that had been presented in the State's case, including

8  all of the omissions and misstatements alleged by Plaintiff: Plaintiff's cell phone records, the

9  surveillance video footage, the varying descriptions of the shooter, and the lack of a positive

10  identification of Plaintiff as the shooter by any eyewitness.

11        This Court opined in its previous ruling that the elements of collateral estoppel would be

12  met if the evidence at trial was not "materially different" than the evidence known at the time of

13  charging. Dkt. 27, at 6. A review of the trial transcript shows this to be the case.

14        There was only one witness presented at trial that was unknown to the detectives when

15  the charges were filed: Jeanette Ault. Jeanette Ault was identified as a witness on January 30,

16  2019. RP 2/8/19 18; RP 2/14/19 33-34. Like the other witnesses to the shooting, Ault could not

17  positively identify Plaintiff as the shooter. She witnessed an argument in the parking lot and saw

18  the shooter climb over the fence. Ault's testimony added no new facts and did nothing more than

19  corroborate Newell's account that the shooter was the same person that he argued with in the

20  parking lot. Ault could not identify the shooter and could not remember any details of his

21  appearance, clothing or car. Ault's testimony corroborating Newell's account of an argument,

22  which other witnesses also heard, did not make the evidence at trial "materially different."

23

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430  Fax (206) 296-8819

In light of the record from the criminal trial, this Court can conclude that the evidence at trial was not materially different from the evidence known to the detectives at the time the charges were filed. Pursuant to this Court's prior ruling, Judge Erlick's ruling collaterally estops Plaintiff from establishing the elements of malicious prosecution.

**C.     Plaintiff's Claim Based On *Brady v. Maryland* Fails As A Matter Of Law Because (1) The Allegedly Material Exculpatory Evidence Was Disclosed To The Prosecutor, (2) The Allegedly Material Exculpatory Evidence Was Also Available To The Defense And Used At Trial, And (3) Plaintiff Was Acquitted.**

Plaintiff alleges that his right to due process was violated by the failure to disclose exculpatory evidence. The primary exculpatory evidence alleged by Plaintiff is a September 7, 2016 email from Detective Broggi to the prosecutor, Julie Kline, characterizing Newell's identification of the man in the surveillance still. Dec. of Summers, Ex. 4. It is an undisputed fact that the email was sent by Detective Broggi to the prosecutor, Julie Kline, on September 7, 2016. *Id.* This fact is fatal to Plaintiff's due process claim. Likewise, it is an undisputed fact that criminal defense counsel was in possession of the email on January 8, 2019, the second day of trial. RP 1/9/19 47-48; Dec. of Summers. This fact is also fatal to his claim. Finally, as other circuits and district courts within this circuit have held, the fact that Plaintiff was acquitted is fatal to his claim as well.[7]

*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), requires both prosecutors and police investigators to disclose exculpatory evidence to criminal defendants under the Due Process Clause. To state a §1983 claim for failure to disclose exculpatory evidence, the

---

[7] To the extent that Plaintiff is alleging that Defendants withheld evidence regarding Daniela Cuadra's credibility, the same arguments apply, as this evidence was known to and used by Plaintiff at the time of the criminal trial. Moreover, it is undisputed that Cuadra accurately identified Plaintiff as the person in the surveillance footage and her testimony was largely corroborated by Plaintiff himself. Any impeachment evidence would not be material under the *Brady* standard.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   plaintiff must allege that: (1) evidence was suppressed by the government; (2) the withheld evidence

2   was favorable because it was exculpatory or could be used to impeach; and (3) the nondisclosure

3   prejudiced the plaintiff. *Smith v. Almada*, 640 F.3d 931, 939 (9th Cir. 2011) (citing *Strickler v.*

4   *Greene*, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)). In *Strickler*, the Court

5   clarified that "strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was

6   so serious that there is a reasonable probability that the suppressed evidence would have produced a

7   different verdict." *Id.* at 281.

8        A law enforcement officer violates due process by withholding material exculpatory

9   evidence from the prosecutor. *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1088 (9th

10  Cir. 2009); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014). In

11  this case, it is undisputed that the prosecutor was one of the recipients of the September 7, 2016

12  email.

13       In addition, the email was obtained by the defense and was available for use at trial. RP

14  1/9/19 47-48; Dec. of Summers. A criminal defendant cannot meet the *Brady* standard when

15  exculpatory evidence is in fact available for his use at trial because he cannot show that there was a

16  suppression of evidence that affected the result of the verdict. In *United States v. McKinney*, 758

17  F.2d 1036, 1049 (5th Cir. 1985), the court explained that Brady does not establish a broad discovery

18  rule but defines the State's duty under the Due Process Clause to ensure a fair trial. Thus, the State

19  did not suppress evidence within the meaning of the *Brady* rule when the evidence was disclosed

20  during trial. *Id.* at 1050. If the defendant received the material in time to put it to effective use at

21  trial, there is no due process violation. *Id. See Dotson v. Scribner*, 619 F. Supp. 2d 866, 876 (C.D.

22  Cal. 2008) ("Brady does not hold that a late disclosure is a violation of due process.")

23

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

Finally, other circuits have held that a plaintiff who was never convicted cannot maintain a *Brady* claim. *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012); *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007); *Jean v. Collins*, 221 F.3d 656, 660 (4th Cir. 2000); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988). See also *Smith*, 640 F.3d at 941 (J. Gwin, specially concurring) (discussing but not deciding whether acquittal bars a §1983 Brady claim). Other district courts in this circuit have reached the same conclusion. *See Kastis v. Alvarado*, No. 1-18-CV-01325-DAD-BAM, 2020 WL 2468389, at *5 (E.D. Cal. May 13, 2020) (noting "The Ninth Circuit has not addressed in a published opinion the issue of whether a plaintiff can maintain a § 1983 claim based on alleged *Brady* violations where there is no underlying conviction" but several district courts have found such a claim is not cognizable); *Deeter-Larsen v. Whatcom Humane Soc'y*, C18-300 RAJ, 2019 WL 2524939, at *6 (W.D. Wash. June 19, 2019) (noting "a *Brady* violation cannot occur where there is no conviction").

The right to due process is grounded in the right to a fair trial, and a plaintiff who was acquitted at trial cannot plausibly assert that he was denied a fair trial. *Morgan*, 166 F.3d at 1310. For these three reasons, Plaintiff's claim of a civil rights violation under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment fails as a matter of law.

**D.    Plaintiff's Claim That His Fourth Amendment Rights Were Violated By Issuance Of The Search Warrants Fails As A Matter Of Law Because, After Setting Aside The Alleged Misstatements And Omissions, There Was Sufficient Probable Cause For Issuance Of The Search Warrants.**

When a plaintiff alleges that a law enforcement officer deliberately submitted inaccurate information in a search warrant affidavit, the court's inquiry is governed by *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). *Hervey v. Estes*, 65 F.3d 784, 788

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 17

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

(9th Cir. 1995), *as amended on denial of reh'g* (Dec. 5, 1995). A warrant obtained may be invalid under the Fourth Amendment if it was obtained through deliberate material misstatements or omissions, or through statements made in reckless disregard for the truth. *State v. Clark*, 143 Wash.2d 731, 751, 24 P.3d 1006 (2001). However, negligence and innocent mistakes are insufficient to invalidate a warrant. *Id.* (citing *Franks*, 438 U.S. at 171). Moreover, if false or reckless statements are set to one side and there is still sufficient information in the warrant affidavit to support a finding of probable cause, the warrant is valid. *Franks*, 438 U.S. at 171–72. "It is only objectively unreasonable for a law enforcement officer to deliberately or recklessly misstate facts material to a probable cause determination." *Hervey*, 65 F.3d at 789. False statements and omissions are material if the probable cause affidavit, "once corrected and supplemented," would not support probable cause. *Chism v. Washington State*, 661 F.3d 380, 389 (9th Cir. 2011). Thus, Plaintiff must establish materiality: that without the alleged false statements or omitted information the reviewing magistrate would not have issued the warrant. *Hervey*, 65 F.3d at 789. The question of materiality is a question of law for the court. *Id.*

As previously noted, probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Recognizing that affidavits are drafted by nonlawyers in the haste of an investigation, the Court long ago held that "technical requirements of elaborate specificity" are not appropriate. *Id.* at 235 (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965)). The test is whether, given the totality of circumstances, there is a fair probability that evidence of a crime will be found in a particular place. *Id.* at 238. The fair probability standard does not require certainty or even a preponderance of the evidence. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006).

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1   Setting aside the misstatements and omissions alleged by Plaintiff, the information

2   provided in the affidavits was sufficient to establish probable cause for issuance of the warrants

3   and thus the alleged misstatements and omissions were not material. There is no question that

4   there was probable cause to believe that someone had committed murder and assault by shooting

5   Love and Killarzoac. The affidavit for the warrant set forth the same facts that support probable

6   cause for the charge. Dec. of Summers, Ex. 5. Newell, the eyewitness to the shooting who had

7   the most interaction with the shooter, gave an initial description of the shooter as a black man

8   wearing a distinctive brown leather backpack. *Id.* at 2. He reported that he and Love argued with

9   the man as he crossed the parking lot below their motel window and then the man climbed over

10  the fence. *Id.* When Love and Newell exited the motel they continued to argue with this man,

11  who was on the other side of the fence, and Meyer joined them at the fence. *Id.* at 3. The man

12  shot Love as he stood at the fence. *Id.* Newell added that he had seen the shooter enter the

13  property over the fence on other days in the preceding two weeks before the shooting. *Id.* at 2.

14  He surmised that this person was dealing drugs at the motel. *Id.*

15  The detectives located a possible suspect in surveillance footage and it was determined

16  that he had frequent contact with a room occupied by Daniela Cuadra and Abelina Kidane. *Id.* at

17  3. The detectives located Cuadra and Kidane and interviewed them. *Id.* They separately

18  identified Plaintiff. *Id.* at 3. They also confirmed that Plaintiff had come to the motel property

19  before to sell heroin and usually parked beyond the fence, requiring him to climb over the fence

20  to enter the property. *Id.* Cuadra also confirmed that Plaintiff carried an expensive brown leather

21  backpack. *Id.* Cuadra provided three phone numbers she used to contact Plaintiff. *Id.* at 4. The

22  detectives found a booking photograph of Plaintiff and confirmed that he appeared to be the

23

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 19

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1  person in the surveillance video. *Id.* at 3. The detectives also determined that Plaintiff had prior

2  convictions for firearm-related offenses and narcotics. *Id.* at 4.

3  Viewed in totality, these facts provided a fair probability that evidence of the crimes, in

4  particular determining Plaintiff's approximate location at the time of the shooting, would be

5  found in the service provider records for Plaintiff's cell phones.

6  Setting aside alleged misstatements and including alleged omissions, the warrants were

7  supported by probable cause. Although neither Newell nor Meyer were able to identify Plaintiff

8  from a photographic montage, neither of them interacted with the shooter at close range in good

9  lighting. Moreover, Plaintiff was wearing a baseball cap that obstructed much of his face.

10  Notwithstanding the lack of a positive identification, there remained a fair probability that the

11  man with the distinctive brown leather backpack seen leaving the motel property as Newell had

12  described immediately prior to the shooting was the shooter. As to Cuadra and Kidane's

13  reliability, their identification of Plaintiff was corroborated by the detectives' comparison of the

14  surveillance video with known photos of Plaintiff. There was a fair probability that Plaintiff,

15  once identified as the man crossing the parking lot and climbing over the fence with a brown

16  leather backpack immediately prior to the shooting, was the shooter.

17  Once the cell phone records were obtained, the T-Mobile records confirmed what the

18  surveillance video and Cuadra and Kidane's identification had already established by a fair

19  probability: that Plaintiff was at the Motel 6 at the time of the shooting. Dec. of Summers, Ex. 6.

20  Viewing the challenged affidavits as required by *Franks*, this Court can determine as a matter of

21  law that the warrants were supported by probable cause. Plaintiff's claim of a civil rights

22  violation under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments fails as a matter of

23  law.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 20

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

### E.   Plaintiff's *Monell* Claim Fails As A Matter of Law.

A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 694, 98 S. Ct.  2018, 56 L. Ed.2d 611 (1978). Because there were no violations of Plaintiff's constitutional rights as argued above, his *Monell* claim fails as a matter of law. *Id.* at 692.

## V.   CONCLUSION

Summary judgment in favor of Defendants on all of Plaintiff's claims is appropriate. Plaintiff is collaterally estopped from establishing want of probable cause by the criminal trial court ruling that there was sufficient evidence for a reasonable jury to convict Plaintiff. Thus, his malicious prosecution claim fails as a matter of law. Plaintiff's *Brady* claim fails as a matter of law because the alleged exculpatory evidence was provided to the prosecutor, was available for use at trial and because Plaintiff was not convicted. Plaintiff's Fourth Amendment claim fails as a matter of law because after setting aside all alleged misstatements and omissions the search warrant affidavits presented sufficient facts to establish probable cause that evidence of the shooting would be found in Plaintiff's cell phone records and home. For the foregoing reasons, this Court should grant summary judgment for Defendants.

SIGNED this 1st day of October, 2020.

> DANIEL T. SATTERBERG
> King County Prosecuting Attorney
> */s/Ann M. Summers*
> ANN SUMMERS, WSBA #21509
> CARLA CARLSTROM, WSBA #27521
> Senior Deputy Prosecuting Attorneys
> Attorneys for King County Defendants
> ann.summers@kingcounty.gov
> carla.carlstrom@kingcounty.gov

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 21

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819

1

## **CERTIFICATE OF FILING AND SERVICE**

2        I hereby certify that on October 1, 2020, I electronically filed the foregoing document

3   with the Clerk of the Court using CM/ECF E-filing System which will send notification of such

4   filing to the following CM/ECF participant:

5                          Tiffany M. Cartwright
                           Timothy K. Ford
6                          Rebecca Talbott
                           MacDonald Hoague & Bayless
7                          705 Second Avenue, Suite 1500
                           Seattle, WA 98104
8
         I declare under penalty of perjury under the laws of the State of Washington that the
9
    foregoing is true and correct.
10
         SIGNED this 1st day of October, 2020.
11

12                                    *Jennifer L Revak*

13                          JENNIFER REVAK
                           Legal Secretary
                           King County Prosecuting Attorney's Office
14

15

16

17

18

19

20

21

22

23

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(2:19-cv-01410-JCC-MAT) - 22

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-0430  Fax (206) 296-8819